Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/09/2020 09:08 AM CDT

State of Nebraska, appellee, v. Juan
Gonzalez Martinez, appellant.

___ N.W.2d ___

Filed July 17, 2020.    No. S-19-758.

1. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.

2. **Rules of Evidence: Appeal and Error.** Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.

3. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

4. **Rules of Evidence: Hearsay: Appeal and Error.** Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination to admit evidence over a hearsay objection.

5. **Rules of Evidence: Hearsay: Witnesses: Interpreters: Proof.** Where the translator of a defendant's out-of-court verbal or written statements from a foreign language to English is initially shown by the State to be qualified by knowledge, skill, experience, training, or education to perform such translation, and where the translator testifies at trial and is subject to cross-examination, the translation is admissible as nonhearsay under Neb. Evid. R. 801(4), and any challenges to the accuracy of the translation go to the weight of the evidence and not to its admissibility.

6. **Appeal and Error.** An objection, based on a specific ground and properly overruled, does not preserve a question for appellate review on any other ground.

7. **Rules of Evidence: Hearsay.** In determining whether a statement is admissible under the residual hearsay exception to the hearsay rule, a court considers five factors: a statement's trustworthiness, the materiality of the statement, the probative importance of the statement, the interests of justice, and whether notice was given to an opponent.

8. **Rules of Evidence: Notice.** An adverse party's knowledge of a statement is not enough to satisfy the notice requirement of Neb. Evid. R. 803(23).

9. **Rules of Evidence: Hearsay: Pretrial Procedure: Notice.** The proponent of the evidence must provide notice before trial to the adverse party of his or her intentions to use the statement to take advantage of the residual hearsay exception.

10. **Trial: Evidence: Appeal and Error.** Because overruling a motion in limine is not a final ruling on admissibility of evidence and, therefore, does not present a question for appellate review, a question concerning admissibility of evidence which is the subject of a motion in limine is raised and preserved for appellate review by an appropriate objection to the evidence during trial.

11. ____: ____: ____. The procedure of renewing an objection at trial following a motion in limine provides an important procedural safeguard against reversible error, because it provides the court with a final opportunity to (1) determine the potential for prejudice within the context of other evidence at trial and (2) exclude unduly prejudicial evidence before it is revealed to the jury if the court determines that it is indeed prejudicial.

12. **Motions to Suppress: Confessions: Constitutional Law: Miranda Rights: Appeal and Error.** In reviewing a motion to suppress a statement based on its claimed involuntariness, including claims that law enforcement procured it by violating the safeguards established by the U.S. Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error. Whether those facts meet constitutional standards, however, is a question of law, which an appellate court reviews independently of the trial court's determination.

13. **Motions to Suppress: Appeal and Error.** In reviewing a motion to suppress, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and considers that the trial court observed the witnesses testifying in regard to such motions.

14. **Miranda Rights: Waiver.** *Miranda* warnings are an absolute prerequisite to custodial interrogation; statements made during a custodial

interrogation in the absence of these warnings and a valid *Miranda* waiver are inadmissible, even if otherwise voluntarily made.

15. **Miranda Rights: Waiver: Proof.** If a defendant seeks suppression of a statement because of an alleged violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), the State must prove that the defendant validly waived his or her *Miranda* rights by a preponderance of the evidence.

16. **Miranda Rights: Waiver: Words and Phrases.** To be a valid waiver of *Miranda* rights, the waiver must be knowing and voluntary. A waiver is knowing if it is made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. A waiver is voluntary if it is the product of a free and deliberate choice rather than through intimidation, coercion, or deception.

17. **Miranda Rights: Waiver: Appeal and Error.** An appellate court looks to the totality of the circumstances to determine whether a defendant validly waived his or her *Miranda* rights.

18. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

19. **Sexual Assault: Testimony: Proof.** The State is not required to corroborate a victim's testimony in cases of first degree sexual assault; if believed by the finder of fact, the victim's testimony alone is sufficient.

20. **Sentences: Appeal and Error.** Absent an abuse of discretion by the trial court, an appellate court will not disturb a sentence imposed within the statutory limits.

21. **Sentences.** In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.

22. ____. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

Appeal from the District Court for Lancaster County: Jodi L. Nelson, Judge. Affirmed.

Joseph D. Nigro, Lancaster County Public Defender, Jennifer M. Houlden, and Ella Newell, Senior Certified Law Student, for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, and Papik, JJ.

Cassel, J.

## I. INTRODUCTION

Juan Gonzalez Martinez appeals from his conviction, pursuant to a jury verdict, and sentence for first degree sexual assault. Martinez primarily argues that the English translation of his Spanish out-of-court statements was inadmissible hearsay. Because the State made a threshold showing of the translator's qualifications, the translator testified at trial, and the translator was subject to cross-examination, the translation was admissible as nonhearsay and the challenges to it went to its weight. We find no merit in his remaining claims regarding the exclusion of residual hearsay evidence, admission of prior sexual conduct, waiver of his *Miranda* rights, sufficiency of the evidence to sustain his conviction for sexual assault, and excessive sentence. We affirm.

## II. BACKGROUND

In this section, we summarize only the central facts and procedures. Additional background will be set forth in the analysis section.

The State filed an information against Martinez for three counts of first degree sexual assault upon his daughter, M.F. She was born in 1995. Because a verdict of acquittal was directed on counts 2 and 3 and Martinez was convicted only

on count 1, we summarize only the evidence regarding that conviction. It addressed the time period from January 2001 to July 2006.

In September 2017, M.F. reported the incidents to law enforcement authorities. At trial, she testified to the following events, which occurred while she was between the ages of 5 and 11. In accordance with our standard of review, we summarize them in the light most favorable to the State.

## 1. Mexico

Prior to trial, Martinez filed a motion for the State to disclose what evidence it intended to offer at trial of "other crimes, wrongs and/or acts of the defendant" and for an evidentiary hearing.

At the evidentiary hearing, the State offered M.F.'s testimony regarding sexual contact that had occurred in Mexico. M.F. stated that, when she was 5 years old, she woke up to Martinez "rubbing on [her] vagina over [her] underwear." She stated that in Mexico, it happened only once. In September 2001, M.F. moved from Mexico to Lincoln, Nebraska, where the sexual conduct escalated.

The court found that evidence of the sexual contact which occurred in Mexico was admissible under Neb. Evid. R. 414, Neb. Rev. Stat. § 27-414 (Reissue 2016). It was relevant to show the progression of the sexual assault, and its probative value was not outweighed by the danger of unfair prejudice.

At trial, M.F. testified to the same events. She stated that Martinez rubbed his fingers on her vagina in a circular motion and told her to stay quiet. Martinez did not renew his objection.

## 2. Lincoln, Nebraska

At trial, M.F. stated that when she moved to Lincoln, her family lived in a mobile home. At that residence, when M.F. was 6 years old, she woke up to Martinez "rub[bing] on my vagina over my underwear." She stated that it lasted several

minutes where "[Martinez] would use his fingers . . . in a circular motion, to rub on my vagina." This was the only sexual contact which occurred at that residence.

M.F. and her family moved to an apartment. At this residence, two incidents occurred. When M.F. was 7 years old, Martinez asked M.F. to perform oral sex on him. Martinez took off both his and M.F.'s pants and underwear. He put his penis into her mouth. Simultaneously, he began to lick M.F.'s vagina. She felt uncomfortable and got off of Martinez. She stated that this was the only occurrence of oral sex.

When M.F. was 7 or 8 years old, the second sexual contact at this residence occurred. Martinez took off M.F.'s pants and underwear and laid her face down on a bed. He grabbed onto her hips, pulled her toward him, and inserted his penis into her anus. She stated that his penis was inserted for only a few seconds, because she "launched forward" from the pain. She got off the bed and ran to the bathroom.

M.F. and her family then moved to a house. At this residence, when M.F. was 9 or 10 years old, Martinez had sexual intercourse with her. Martinez pulled off her pants and underwear, retrieved "a square package" from under the mattress, and placed it on his penis. M.F. believed the square package to be a condom. He inserted his penis into her vagina, moved up and down for a few minutes, removed his penis and condom, and ejaculated onto her stomach.

In July 2017, M.F. told her mother about the sexual contact. In September, M.F. reported it to law enforcement.

### 3. VERDICT AND SENTENCING

After the State rested, counts 2 and 3 of the information were dismissed. Martinez presented no evidence. Count 1 was submitted to the jury, which found Martinez guilty of first degree sexual assault. The district court sentenced Martinez to imprisonment for not less than 30 years and not more than 40 years.

## III. ASSIGNMENTS OF ERROR

Martinez assigns, reordered and restated, that the district court erred when (1) it admitted Luz Aguirre's translations of Martinez' out-of-court statements as a language conduit, (2) it failed to admit the statements of Cindy West and M.F. as residual hearsay, (3) it admitted evidence of sexual contact that occurred outside of the time period and geographical jurisdiction of the charges, and (4) it admitted the videotaped law enforcement interview in violation of Martinez' *Miranda* rights. He further assigns that (5) the evidence was insufficient to sustain a conviction for first degree sexual assault and (6) the court abused its discretion by imposing an excessive sentence.

## IV. ANALYSIS

### 1. Hearsay

#### (a) Standard of Review

[1,2] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.[1] Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.[2]

[3] An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[3]

[4] Apart from rulings under the residual hearsay exception, we review for clear error the factual findings underpinning a trial court's hearsay ruling and review de novo the

---

[1] *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020).

[2] *Id*.

[3] *State v. Epp*, 278 Neb. 683, 773 N.W.2d 356 (2009).

court's ultimate determination to admit evidence over a hearsay objection.[4]

### (b) Spanish-to-English Translations

#### *(i) Additional Facts*

Michael Barry, a Lincoln Police Department investigator, conducted an investigation into the sexual assault allegations. Barry interviewed M.F. and later conducted two controlled calls from M.F. to Martinez. Both calls were made in Spanish and recorded. M.F. consented to a search of her cell phone. Law enforcement extracted text messages between Martinez and M.F., which were in Spanish.

Barry and Luis Herrera, another Lincoln Police Department investigator, conducted and recorded an interview with Martinez. Herrera, who spoke Spanish fluently, acted as an interpreter. During the interview, Herrera asked additional followup and clarification questions.

Aguirre, who testified at trial and was a bilingual records technician for the city of Lincoln, translated transcripts of the cell phone calls, text messages, and law enforcement interview. At trial, the recordings of the law enforcement interview and controlled cell phone calls were played for the jury. The original text messages, in Spanish, were admitted along with Aguirre's English translation.

At trial, Martinez objected to each transcript based on foundation and hearsay.

Martinez questioned Aguirre concerning each transcript. Regarding the cell phone call transcripts, Martinez focused on Aguirre's qualifications. Aguirre had no certifications issued by the State of Nebraska or state court system concerning language interpretation. Aguirre was born in Mexico, is a native Spanish speaker, and primarily speaks Spanish in her home.

Regarding the text messages, Martinez' questions to Aguirre focused on the addition of punctuation and grammar. The

---

[4] *State v. Montoya*, 305 Neb. 581, 941 N.W.2d 474 (2020).

text messages from Martinez did not contain any punctuation. Aguirre stated that she added punctuation because "I just feel that that's where a different sentence starts." And "[a]s I'm reading it, it is a sentence because that's the way I'm reading it in Spanish." Regarding one translated statement, Martinez' questions focused on its accuracy. Aguirre testified that the meaning-for-meaning translation was: "Look, you don't remember what your mom did to me, and what I did to you is unforgivable." Aguirre further stated that a word-for-word translation was: "Look, your mom" "you don't remember" "[w]hat you did to me" "[w]hat I did with you" "does not have forgiveness or apology."

Regarding the law enforcement interview, Martinez' examination of Aguirre focused on the translation of the word "uh-huh." Throughout the law enforcement interview, Martinez replied "uh-huh" to several questions and statements, which appears in the transcript. Aguirre stated that when translating, there is a shortcut key for the response "uh-huh" that will add "(Yes)." Aguirre agreed that she makes no distinction "based on [her] perception of what [she is] listening to, whether the person is agreeing with what they've been told or acknowledging that they're hearing and understanding what's being said to them."

The district court overruled each objection and found that Aguirre was acting as a language conduit for Martinez.

### (ii) Discussion

Martinez makes four arguments that the district court improperly admitted Aguirre's translated text messages and law enforcement interview as nonhearsay. First, he contends that the district court did not apply the factors under the language conduit theory. Second, he asserts that Aguirre created a new expression when she translated the text messages and added punctuation to his statements. Third, he asserts that Aguirre imposed a new meaning to the expression "uh-huh" when she translated it to "(Yes)." Lastly, he further contends that

the application of agency, under Neb. Evid. R. 801(4)(b)(iv), Neb. Rev. Stat. § 27-801(4)(b)(iv) (Reissue 2016), was an inaccurate application of the relationship between Aguirre and Martinez to admit the translations as nonhearsay.

The State argues that Aguirre's translated statements were not hearsay and were properly admitted. It explained the testimony showed that Aguirre confirmed the translations were a true and accurate translation of the conversations and that Herrera reviewed the law enforcement interview translation and confirmed it was a true and accurate translation. The State contends that the evidence "was sufficient . . . to establish that the English translations in this case were an accurate recitation of Martinez's statements."[5]

We first note that, on appeal, Martinez has challenged only the admission of the English translations based only on hearsay. Although at oral argument, Martinez claimed to have asserted his foundation objection in his brief, we observe that the word "foundation" appears nowhere in the argument section of his brief addressing the translations. We conclude that on appeal, he has abandoned his foundation objection.

Second, at oral argument, Martinez conceded that no Confrontation Clause objection was asserted at trial. As we note below, much of the discussion of a language conduit theory in case law addresses claimed violations of the Confrontation Clause.[6] Here, Martinez did not raise a Confrontation Clause objection at trial, and therefore, we address only his objection based on hearsay.

Third, this is not a challenge to the accuracy of a court-appointed interpreter's rendition between Spanish and English during the course of a trial. Rather, Martinez contests the accuracy of Spanish-to-English translations of recordings of

---

[5] Brief for appellee at 21.

[6] See, *U.S. v. Charles*, 722 F.3d 1319 (11th Cir. 2013); *U.S. v. Nazemian*, 948 F.2d 522 (9th Cir. 1991); *State v. Lopez-Ramos*, 929 N.W.2d 414 (Minn. 2019).

Martinez' spoken words and of text messages containing his written words. At trial, he thoroughly examined the translator regarding the translations' correctness. And he had the opportunity—which he did not exercise—to present other evidence bearing on the translations' precision or shortcomings.

### a. Language Conduit Theory

A language conduit theory has generally been applied to the role of a foreign language interpreter.[7] In our post-*Crawford v. Washington*[8] era, a split among courts has emerged as to the treatment of a foreign language interpreter's out-of-court translation of a defendant's statements.

The majority of courts[9] still follow the "Ninth Circuit's conclusion in *Nazemian v. United States*[10] . . . that the Confrontation Clause is not violated by the admission of translated statements."[11] In *U.S. v. Nazemian*,[12] the Ninth Circuit viewed the threshold question as whether the interpreter's statements were viewed as the defendant's own and constituted admissions properly characterized as nonhearsay under Fed. R. Evid. 801(d)(2)(C) or (D). The Ninth Circuit adopted a factored approach, which considered "which party supplied the interpreter, whether the interpreter had any motive to mislead or distort, the interpreter's qualifications and language skill, and whether actions taken subsequent to the conversation were consistent with the statements as

---

[7] See *id.*

[8] *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

[9] See, *U.S. v. Martinez-Gaytan*, 213 F.3d 890 (5th Cir. 2000); *United States v. Beltran*, 761 F.2d 1 (1st Cir. 1985); *United States v. Da Silva*, 725 F.2d 828 (2d Cir. 1983); *State v. Lopez-Ramos, supra* note 6; *Hernandez v. State*, 291 Ga. App. 562, 662 S.E.2d 325 (2008); *Correa v. Superior Court*, 27 Cal. 4th 444, 40 P.3d 739, 117 Cal. Rptr. 2d 27 (2002).

[10] *U.S. v. Nazemian, supra* note 6.

[11] *State v. Lopez-Ramos, supra* note 6, 929 N.W.2d at 420.

[12] *U.S. v. Nazemian, supra* note 6.

translated."[13] This approach generally treats a translation as the defendant's own statement.

The minority view adopts the position that post-*Crawford* out-of-court statements made by a defendant to law enforcement and translated by an interpreter are testimonial.[14] The minority view found "*Nazemian* . . . irreconcilable with *Crawford* because the analysis in *Nazemian* depends on analogies to the evidentiary rules and premises the admissibility of an interpreter's statements on assumed reliability."[15] The minority view likened the interpreter to a third-party witness and has held that *Crawford* guaranteed the defendant's right to cross-examine the interpreter.

The decision of a divided Minnesota Supreme Court illustrates the divergent approaches.[16] The majority likened a foreign language interpreter to a court reporter, who translates oral communications into a written format, conveying information but not adding content.[17] The majority noted that a defendant bears the burden of proving a translation was inadequate.[18] The dissent conceded that the Spanish versions of the defendant's statements were admissible. Because the interpreter was not available for cross-examination, the dissent asserted that the translations were inadmissible. The dissent would have remanded the matter for a new trial where the State "could either offer the live testimony of the . . . interpreter, or have a different interpreter in the courtroom translate [the defendant's] recorded statement."[19]

---

[13] *Id*. at 527.

[14] See, *U.S. v. Charles, supra* note 6; *Taylor v. State*, 226 Md. App. 317, 130 A.3d 509 (2016).

[15] *State v. Lopez-Ramos, supra* note 6, 929 N.W.2d at 421.

[16] *Id*.

[17] *Id.*

[18] *Id.*

[19] *Id.*, 929 N.W.2d at 429 (Hudson, J., dissenting; Lillehaug and Thissen, JJ., join).

### b. Resolution

In the context of a courtroom interpreter, courts do not expect perfection. We have noted that while a word-for-word translation best ensures that the quality of the translation does not fall below the constitutionally permissible threshold, there is no constitutional right to a "'flawless'" interpretation.[20] "'[C]ourtroom interpretation is a demanding and inexact art, and . . . the languages involved may not have precise equivalents for particular words or concepts.'"[21] It follows that minor or isolated inaccuracies, omissions, interruptions, or other defects in translation are inevitable and do not warrant relief where the translation is on the whole reasonably timely, complete, and accurate, and the defects do not render the proceeding fundamentally unfair.[22]

We do not believe that in a criminal case, translation of a defendant's written words or a recording of his or her spoken words requires a higher standard of accuracy than is required for courtroom interpreters. Our Legislature has directed this court to prescribe standards for court interpreters requiring them to "demonstrate the ability to interpret effectively, accurately, and impartially, both receptively and expressively, using any necessary special vocabulary."[23] But the oath prescribed by statute—requiring an interpreter, "to the best of his or her skill and judgment, [to] make a true interpretation"—recognizes that perfection is not the standard.[24] Thus, our statutes articulate concepts similar to those on both sides of the language conduit theory.

The heart of the hearsay rule is the inability to cross-examine the declarant to test the testimonial infirmities of (1) sincerity,

---

[20] See *Tapio-Reyes v. Excel Corp.*, 281 Neb. 15, 27, 793 N.W.2d 319, 328 (2011).

[21] *Id*. (quoting Annot., 32 A.L.R.5th 149, § 72 (1995)).

[22] *Id*.

[23] Neb. Rev. Stat. § 25-2407 (Reissue 2016).

[24] Neb. Rev. Stat. § 25-2405 (Reissue 2016).

(2) ambiguity, (3) perception, and (4) memory.[25] According to a respected commentator, our evidence rules adopted an assertion-oriented definition of hearsay, while retaining non-hearsay categorization for specific declarant-oriented statements.[26] The commentator also noted that admissions were defined as nonhearsay as a matter of adversarial justice.[27]

Clearly, Martinez' writings or verbal statements in Spanish are nonhearsay. Under rule 801(4)(b)(i), "[a] statement is not hearsay if . . . [t]he statement is offered against a party and is . . . his [or her] own statement."

We think the proper analogy regarding a translation of a defendant's statements is testimony by a witness, who heard or read such statements, describing what the witness heard or read. In *U.S. v. DiDomenico*, Judge Posner stated:

> Because a statement to be admissible as the statement of a party need not have been against interest when made (or at any time for that matter), . . . the admissibility of such a statement cannot convincingly be grounded in the presumed trustworthiness of a statement that is against the utterer's self-interest to give. . . . The standard justification of its admissibility is a kind of estoppel or waiver theory, that a party should be entitled to rely on his opponent's statements.[28]

Even if a witness does not recall a party opponent's statement with perfect accuracy, the statement is still admissible.

For example, in *State v. Devers*,[29] two jailhouse informants testified that the defendant told the defendant's cousin that he had a "'lick'" for him.[30] One jailhouse informant stated that

---

[25] R. Collin Mangrum, Mangrum on Nebraska Evidence § 27-801[D](4)(a) (2019).

[26] See *id.*

[27] See *id.*

[28] *U.S. v. DiDomenico*, 78 F.3d 294, 303 (7th Cir. 1996).

[29] *State v. Devers, ante* p. 429, ___ N.W.2d ___ (2020).

[30] *Id.* at 437, ___ N.W.2d at ___.

the word "lick" meant a target for robbery, and the other stated that it was a robbery of a drug dealer. Both of their interpretations were admitted without objection. Interpretation takes place in testimony regarding modern slang or colloquial terms, and we do not preclude such testimony as hearsay. The keys are that the statement being translated from a foreign language originated as the defendant's own statement and that the witness making the translation testifies in court and is subject to cross-examination.

[5] We hold that where the translator of a defendant's out-of-court verbal or written statements from a foreign language to English is initially shown by the State to be qualified by knowledge, skill, experience, training, or education to perform such translation, and where the translator testifies at trial and is subject to cross-examination, the translation is admissible as nonhearsay under rule 801(4), and any challenges to the accuracy of the translation go to the weight of the evidence and not to its admissibility.

Here, Aguirre testified at trial and was subject to cross-examination. Martinez thoroughly cross-examined Aguirre and adduced both a meaning-for-meaning and word-for-word translation of the statements at issue. Martinez failed to show how Aguirre's translation was inaccurate or created a new meaning. Moreover, the jury was presented with Martinez' original Spanish text messages, and they were available to him to present his own translation. Accordingly, the district court did not err in admitting the nonhearsay evidence.

### (c) Residual Hearsay

#### *(i) Additional Facts*

In 2002, M.F. disclosed to her first grade teacher, West, that someone was hurting her and identified the person. A Lincoln police officer, Kevin Hinton, then interviewed M.F. at a child advocacy center. Subsequently, Hinton interviewed West. Hinton compiled the interviews into a report.

During trial, Martinez notified the State of his intent to enter Hinton's report under the residual hearsay exception.

At trial, Hinton testified concerning the investigation he conducted and his interview with M.F. Martinez inquired into the questions that West asked M.F. The State objected based on hearsay. The court excused the jury, and Martinez made an offer of proof. Martinez argued that West's statements to Hinton in his police report qualify under the residual hearsay exception of Neb. Evid. R. 803(23), Neb. Rev. Stat. § 27-803(23) (Reissue 2016).

The district court sustained the hearsay objection.

### (ii) Discussion

Martinez argues that Hinton's report should have been admitted under the residual hearsay exception, because West's statements to Hinton were trustworthy and material to the identification of who sexually assaulted M.F. He further argues that M.F.'s statements should have been admitted under the excited utterance exception and that Hinton's statements were not hearsay but offered as context for M.F.'s and West's statements.

[6] Martinez' arguments concerning excited utterance and context were not preserved for appellate review. An objection, based on a specific ground and properly overruled, does not preserve a question for appellate review on any other ground.[31] Because at trial Martinez raised only the residual hearsay objection, his other grounds for admission are not properly preserved. And we do not address them.

The State argues that Martinez "failed to comply with the notice requirement [of rule 803(23)], which is . . . 'mandatory' as a matter of law, so his proposed evidence was properly excluded."[32] We agree.

---

[31] See *State v. Oldson*, 293 Neb. 718, 884 N.W.2d 10 (2016).

[32] Brief for appellee at 25.

[7] We have stated that in determining whether a statement is admissible under the residual hearsay exception to the hearsay rule, a court considers five factors: a statement's trustworthiness, the materiality of the statement, the probative importance of the statement, the interests of justice, and whether notice was given to an opponent.[33] Rule 803(23) provides in part:

> A statement may not be admitted under this exception unless the proponent of it makes known to the adverse party, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his or her intention to offer the statement and the particulars of it, including the name and address of the declarant.

We have held that, under Neb. Evid. R. 804(2)(e), Neb. Rev. Stat. § 27-804(2)(e) (Reissue 2016), "'the notice requirement is mandatory.'"[34] And we have further held that "[w]e find no principled ground for deciding differently under [rule] 803(23)."[35]

[8,9] Pretrial notice of an intent to admit evidence under the residual hearsay exception is mandatory. An adverse party's knowledge of a statement is not enough to satisfy the notice requirement of rule 803(23).[36] The proponent of the evidence must provide notice *before trial* to the adverse party of his or her intentions to use the statement to take advantage of the residual hearsay exception.[37] On several occasions, we

---

[33] *State v. Epp, supra* note 3. See, also, *State v. Stricklin*, 290 Neb. 542, 861 N.W.2d 367 (2015) (applying Neb. Evid. R. 804(2)(e), Neb. Rev. Stat. § 27-804(2)(e) (Reissue 2016): identical rule where declarant is unavailable to testify).

[34] *State v. Robinson*, 271 Neb. 698, 734, 715 N.W.2d 531, 562 (2006) (citing *State v. Liesy*, 207 Neb. 118, 295 N.W.2d 715 (1980)).

[35] *State v. Castor*, 262 Neb. 423, 431, 632 N.W.2d 298, 305 (2001).

[36] See *State v. Draganescu*, 276 Neb. 448, 755 N.W.2d 57 (2008).

[37] *Id.*

have affirmed the trial court's exclusion of evidence based upon a failure to give proper pretrial notice of a party's intention to use an out-of-court statement under the residual hearsay exception.[38]

Here, the record reflects that no proper pretrial notice was given. At trial, Martinez informed the State and district court that he sought to admit West's and M.F.'s statements in Hinton's report under the residual hearsay exception. Martinez concedes that he "informed the State during the trial, which was as soon as reasonably possible under the circumstances."[39] The record clearly shows that Martinez failed to comply with the language of rule 803(23) and give proper pretrial notice of his intent to admit evidence as residual hearsay. We conclude that the district court did not abuse its discretion in determining that the evidence was not admissible under the residual hearsay exception.

## 2. Prior Sexual Conduct

Martinez argues that M.F. should not have been allowed to testify regarding sexual contact that occurred in Mexico. He contends that the evidence "violate[d] the bar on propensity evidence" in Neb. Evid. R. 404(2) and (3), Neb. Rev. Stat. § 27-404(2) and (3) (Reissue 2016), and lacked "sufficient indicia of reliability to meet the clear and convincing standard" of rule 414.[40] The record shows that regarding the evidence of sexual contact in Mexico, Martinez only filed a pretrial motion and made an objection at the evidentiary hearing on that motion. No objection was made at trial.

[10,11] An objection at trial was necessary. We have held that because overruling a motion in limine is not a final ruling on admissibility of evidence and, therefore, does not present

---

[38] See, *id*; *State v. Robinson, supra* note 34; *State v. Liesy, supra* note 34; *State v. Reed*, 201 Neb. 800, 272 N.W.2d 759 (1978).

[39] Brief for appellant at 41.

[40] Brief for appellant at 30.

a question for appellate review, a question concerning admissibility of evidence which is the subject of a motion in limine is raised and preserved for appellate review by an appropriate objection to the evidence during trial.[41] We have explained that the procedure of renewing an objection at trial following a motion in limine provides an important procedural safeguard against reversible error, because it provides the court with a final opportunity to (1) determine the potential for prejudice within the context of other evidence at trial and (2) exclude unduly prejudicial evidence before it is revealed to the jury if the court determines that it is indeed prejudicial.[42]

The same reasoning applies here. Because Martinez failed to renew his objection at trial, he has not preserved the claimed error for appellate review.[43] Accordingly, we will not address it. We recognize that here, the pretrial proceeding occurred outside of the jury's presence after the trial had begun. But that makes no difference. When the matter came before the jury, our procedure required an objection (which could have been done by a request to preserve the ruling made shortly before) in order to provide the trial court with the final opportunity for reconsideration before the evidence reached the jury.

### 3. Motion to Suppress

#### (a) Additional Facts

In December 2017, Barry and another plain clothes officer went to Martinez' home to discuss the sexual assault allegations. When Barry arrived at Martinez' home, Barry spoke to Martinez in English and Martinez responded in English. Martinez agreed to talk with the officers and was given a ride to the police station. During the drive, the officers did not ask Martinez any questions.

---

[41] *State v. Wood*, 296 Neb. 738, 895 N.W.2d 701 (2017).

[42] See *State v. Huston*, 285 Neb. 11, 824 N.W.2d 724 (2013).

[43] See *State v. Swindle*, 300 Neb. 734, 915 N.W.2d 795 (2018) (failure to make timely objection waives right to assert prejudicial error on appeal).

At the police station, Barry was joined by Herrera. Before the interview began, Herrera read a copy of the *Miranda* waiver form, in Spanish, to Martinez. Martinez signed the *Miranda* waiver form.

Prior to trial, Martinez moved to suppress any statements made to law enforcement, asserting they were made in violation of his *Miranda* rights. A hearing was held at which the parties presented evidence. In the district court's order, it found that based on Barry's and Herrera's testimony and the law enforcement interview, Martinez was fully informed of his *Miranda* rights. The court found that Martinez freely, voluntarily, and intelligently waived his rights and that such waiver "was not the product of any promises, threats, force, fear, oppression, coercion, trickery, or a will overborne." It overruled the motion to suppress.

At trial, Martinez renewed his motion to suppress. The court overruled the motion for the same reasons.

(b) Standard of Review

[12] In reviewing a motion to suppress a statement based on its claimed involuntariness, including claims that law enforcement procured it by violating the safeguards established by the U.S. Supreme Court in *Miranda v. Arizona*,[44] an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error. Whether those facts meet constitutional standards, however, is a question of law, which an appellate court reviews independently of the trial court's determination.[45]

[13] In reviewing a motion to suppress, we do not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognize the trial court as the finder of fact and consider that

---

[44] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[45] *State v. Guzman*, 305 Neb. 376, 940 N.W.2d 552 (2020).

the trial court observed the witnesses testifying in regard to such motions.[46]

### (c) Discussion

Martinez argues that the evidence shows that law enforcement misled Martinez in his appreciation of the detention and that those efforts were coercive. Martinez further argues that the district court "unreasonabl[y] reject[ed] [his] sworn testimony" that "he did not sign any Miranda waiver form."[47] This argument invites us to pass on credibility or reweigh evidence. We decline to do so.

[14,15] *Miranda* warnings are an "'absolute prerequisite'" to custodial interrogation; statements made during a custodial interrogation in the absence of these warnings and a valid *Miranda* waiver are inadmissible, even if otherwise voluntarily made.[48] If a defendant seeks suppression of a statement because of an alleged violation of *Miranda*,[49] the State must prove that the defendant validly waived his or her *Miranda* rights by a preponderance of the evidence.[50]

[16,17] To be a valid waiver of *Miranda* rights, the waiver must be knowing and voluntary. A waiver is knowing if it is made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. A waiver is voluntary if it is the product of a free and deliberate choice rather than through intimidation, coercion, or deception.[51] An appellate court looks to the totality of the circumstances to determine whether a defendant validly waived his or her *Miranda* rights.[52]

---

[46] See *State v. Wenke*, 276 Neb. 901, 758 N.W.2d 405 (2008).

[47] Brief for appellant at 37.

[48] *State v. Hernandez*, 299 Neb. 896, 917, 911 N.W.2d 524, 543 (2018).

[49] *Miranda v. Arizona, supra* note 44.

[50] *State v. Burries*, 297 Neb. 367, 900 N.W.2d 483 (2017).

[51] *State v. Hernandez, supra* note 48.

[52] See *State v. Burries, supra* note 50.

The undisputed evidence shows that Martinez knowingly, voluntarily, and intelligently waived his *Miranda* rights. Both Barry and Herrera stated that Herrera read Martinez the *Miranda* waiver in Spanish. When Herrera spoke Spanish, Martinez acknowledged that he understood Herrera. Martinez then signed the *Miranda* waiver form. The recorded interview captured the same events. In the video, Martinez responded coherently to each of the questions Herrera asked from the *Miranda* waiver form and signed the form. The express written statement of a waiver is "strong proof of the validity of that waiver."[53] Under a totality of the circumstances, Martinez understood his *Miranda* rights and knowingly, voluntarily, and intelligently waived them. Accordingly, the district court did not err in overruling Martinez' motion to suppress.

### 4. SUFFICIENCY OF EVIDENCE

#### (a) Standard of Review

[18] In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[54]

#### (b) Discussion

Martinez makes two arguments regarding the sufficiency of the evidence to support a conviction. First, he argues that M.F.'s testimony lacked corroboration and, therefore, was

---

[53] *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979). See *State v. Burries, supra* note 50.

[54] *State v. Devers, supra* note 29.

insufficient to find Martinez guilty. Second, he argues that M.F.'s credibility was called into question when "she admitted to lying to police officers about the alleged interactions between her and [Martinez] at the charging stage."[55]

[19] Both of Martinez' arguments fail. First, the State is not required to corroborate a victim's testimony in cases of first degree sexual assault; if believed by the finder of fact, the victim's testimony alone is sufficient.[56] Therefore, if the jury believed M.F., her testimony alone was sufficient to sustain the conviction. Second, Martinez' argument concerning M.F.'s credibility invites us to pass on credibility or reweigh the evidence. We decline to do so.

Viewing the evidence in the light most favorable to the prosecution and without passing on the credibility of witnesses, we conclude there was sufficient evidence for any rational trier of fact to find Martinez guilty beyond a reasonable doubt.

## 5. Excessive Sentence

### (a) Standard of Review

[20] Absent an abuse of discretion by the trial court, an appellate court will not disturb a sentence imposed within the statutory limits.[57] An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[58]

### (b) Discussion

Martinez does not dispute that his sentence is within the statutory limits, but he contends that the district court abused its discretion by imposing an excessive sentence. Before

---

[55] Brief for appellant at 45.

[56] *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019).

[57] *State v. Montoya, supra* note 4.

[58] *Id.*

addressing his two arguments, we recall the governing principles of law.

[21,22] The law governing review of sentences in criminal cases is well settled. In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.[59] The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.[60] With these principles in mind, we turn to Martinez' specific arguments.

First, Martinez argues that the district court "failed to adequately weigh"[61] his limited criminal history and positive behavior while incarcerated. He relies on his "minimal"[62] criminal history of traffic violations and a first offense driving under the influence conviction. Second, he argues that the presentence investigation report "inflated the criminality of [his] companions."[63] He contends that the high-risk rating of the companions section of his "LS/CMI" report was disproportionate to the criminal history section, because both Martinez and his friend have a driving under the influence conviction. He asserts that this categorization "demonstrate[d] the arbitrary nature of these categorizations."[64]

---

[59] *Id.*

[60] *Id.*

[61] Brief for appellant at 47.

[62] *Id.*

[63] *Id.*

[64] *Id.*

At the sentencing hearing, the court emphasized that Martinez' continued denial and "victim blaming" was significant, that "[he was] not an appropriate candidate for probation, that [he was] a risk to the community, [he was] a risk to re-offend and that a substantial sentence must be imposed." It explained that his crime was serious, because as a father he subjected his daughter to harm both for many previous years and into the future.

The record shows that the district court reviewed the entire presentence report, which contained the information necessary to weigh the sentencing factors. In the "LS/CMI" report, Martinez scored high risk in education/employment, companions, procriminal attitude/orientation, and antisocial patterns. The report explained that he scored high risk in the companions section, because "[Martinez] was not able to provide information about positive persons that he might associate with [or] if he identified only pro-social companions, but admitted to engaging in criminal activities using behaviors, or other anti-social behaviors with others."

Martinez quarrels with the weight afforded to the factors by the sentencing court. As we have previously stated, "We do not review sentences de novo, but only for an abuse of discretion."[65] We conclude that the district court did not abuse its discretion when imposing the sentence.

## V. CONCLUSION

We conclude that the district court did not err in admitting the translated English statements by Aguirre and excluding evidence under the residual hearsay exception. Based upon the totality of the circumstances, we conclude that the district court did not err in determining that Martinez waived his *Miranda* rights. Viewing the evidence in the light most favorable to the State, we further conclude that the evidence

---

[65] *State v. Blaha*, 303 Neb. 415, 421, 929 N.W.2d 494, 501 (2019).

at trial supported Martinez' conviction. Finally, we conclude that the district court did not abuse its discretion when imposing Martinez' sentence. Accordingly, we affirm Martinez' conviction and sentence.

Affirmed.

Freudenberg, J., not participating.