IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. BENITO YA

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

MARTIN BENITO YA, APPELLANT.

Filed November 9, 2021.    No. A-21-518.

Appeal from the District Court for Dodge County: GEOFFREY C. HALL, Judge. Affirmed.

Richard Register, for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

RIEDMANN, BISHOP, and ARTERBURN, Judges.

ARTERBURN, Judge.

INTRODUCTION

Martin Benito Ya appeals from his plea-based convictions in the district court for Dodge County for first degree sexual assault of a child and incest. On appeal, Benito Ya alleges that the district court failed to preserve an accurate record of the proceedings, erred by not ensuring he understood the proceedings, and imposed excessive sentences. For the reasons set forth herein, we affirm.

BACKGROUND

On February 17, 2021, the State charged Benito Ya by information with two counts of first degree sexual assault of a child, two counts of incest, and two counts of child abuse. Pursuant to a plea agreement, the State amended the information to charge Benito Ya with one count of first degree sexual assault of a child, a Class IB felony, pursuant to Neb. Rev. Stat. § 28-319.01 (Reissue

- 1 -

2016), and one count of incest, a Class IIA felony, pursuant to Neb. Rev. Stat. § 28-703 (Reissue 2016). Benito Ya pled no contest to the charges contained in the amended information.

Benito Ya does not read, write, or speak English. He speaks K'iche', a Mayan language. He was appointed an interpreter to assist him during the court proceedings; however, there is no court certification for the K'iche' language. At the initial hearing before the district court, Benito Ya's counsel informed the court that there would be some translation issues because Benito Ya could not read the rights or advisories in his native language. However, his counsel also stated that "[t]he Court should be informed that we've had multiple communications with this interpreter and [Benito Ya] and explained various things. He does appear to understand and respond appropriately to this language as it is being translated."

At that same hearing, the district court informed Benito Ya that first degree sexual assault of a child is a Class IB felony. The court at that time incorrectly advised Benito Ya that the minimum sentence is 20 years' imprisonment, but accurately identified the maximum sentence as being life imprisonment. See *State v. Russell*, 291 Neb. 33, 863 N.W.2d 813 (2015). Initially, Benito Ya indicated that he did not understand the court's sentencing advisement. The district court explained the sentencing advisement again, and Benito Ya then informed the court that he now understood the advisement. The district court then advised Benito Ya that the charge of incest is a Class IIA felony, which carries a minimum sentence of no imprisonment and a maximum sentence of 20 years' imprisonment. After the district court advised Benito Ya about the possible sentences and his rights, Benito Ya's counsel informed the court:

> I have spoken with my client [and] with the interpreter on multiple occasions. We have reviewed these rights with him. He's had ample opportunity to ask follow-up questions to see if he would understand those rights. And when he did not understand a technical word, other words were substitute[d] with equivalent meaning. For example, cross-examination was used by me in the terms of ask questions of their witness. This has happened on multiple occasions. All his questions have been answered ad infinitum.

The district court continued to pursue whether Benito Ya understood what was happening by asking him if there were any words or phrases that he did not understand. Benito Ya, through his interpreter, affirmatively indicated that he understood. When Benito Ya's counsel was asked whether he believed that Benito Ya fully understood his rights and the consequences of waiving those rights, his counsel responded in the affirmative. Counsel specifically stated that there was no reason the court should not accept Benito Ya's pleas.

The factual basis provided by the State revealed that between November and December 2018, Benito Ya had penile-vaginal sexual intercourse with his biological daughter, D.B.T., who was 15 years old. D.B.T. became pregnant with Benito Ya's child. The child was born in May 2019 and had a type of anemia, normally associated with children from incestuous relationships. A DNA paternity test was conducted and confirmed that Benito Ya is both the biological father and biological grandfather of D.B.T.'s child.

The court found that Benito Ya fully understood his rights, that he freely and voluntarily waived them, and that he fully understood the nature of the charges brought against him and the penalties that can be imposed. The court further found that Benito Ya's pleas were made freely, voluntarily, knowingly, and intelligently. The court accepted Benito Ya's pleas of no contest and

adjudged him guilty of first degree sexual assault of a child and incest. The court then ordered that a presentence investigation be conducted.

The presentence investigation report (PSR) revealed that Benito Ya scored in the high risk range to reoffend according to the Level of Service Case Management. Benito Ya was 44 years old at the time of sentencing and was unemployed. The probation officer who conducted the investigation noted repeatedly that in the opinion of the interpreter and in his opinion, Benito Ya was often evasive in his answers. At other times he refused to cooperate and answer questions. Benito Ya, a citizen of Guatemala, was determined to be an undocumented immigrant. Benito Ya had minimal criminal history which included a charge of contempt of court in 2006 in Florida. His record indicated that he was also deported from the United States in 2018, however, he indicated that he left the United States on his own. D.B.T. completed a victim impact statement, which was included within the PSR. She indicated she had come to the United States with her father in 2018. She asserted that Benito Ya raped her multiple times while he was drunk. In addition, she stated that Benito Ya attempted to strangle her. She stated that Benito Ya had previously abused her psychologically, emotionally, and verbally. Benito Ya expressed to the probation officer that he believed that D.B.T. had sex with him of her own free will. Benito Ya explained to the probation officer that "we do not understand his culture" inferring that his acts were not prohibited in his culture. However, he denied that he or anyone else in his family had subjected his female relatives to similar sexual abuse.

At the sentencing hearing, the district court reiterated the possible sentence Benito Ya faced on the charge of incest and partially corrected what the possible sentence was on the charge of first degree sexual assault of a child. Specifically, the court still advised Benito Ya that the penalty on that charge was 20 years' to life imprisonment, but added that the statute did require that a 15-year mandatory minimum sentence be imposed on that charge. Benito Ya informed the court he understood the revision to the court's sentencing advisement as well as the court's reiteration of the penalty for incest. Benito Ya's counsel informed the court that he (through the interpreter), had explained to Benito Ya that he could potentially withdraw his plea based on the prior advisement not being complete, but that Benito Ya "has decided that it is still in his best interests to accept the plea bargain as previously pled to even with the correction." On appeal, Benito Ya does not assign error to the court's advisement as corrected. While we note that the proper advisement would have been simply that the minimum term of imprisonment on count one is a mandatory minimum of 15 years, we find no prejudice to Benito Ya or plain error by virtue of the court's advisement. See *State v. Russell*, 291 Neb. 33, 863 N.W.2d 813 (2015).

The State asked the district court to impose a lengthy prison sentence because the offenses involved Benito Ya's minor daughter. The State explained that Benito Ya raped and violated his daughter repeatedly. In addition, he impregnated her and the child was born with a blood disorder. The State noted that Benito Ya abused D.B.T. emotionally, physically, and sexually. According to the PSR, Benito Ya was considered a high risk to reoffend. The State also argued that Benito Ya was uncooperative during the presentence investigation and he continued to blame D.B.T.

Benito Ya's counsel argued, primarily, that there was a difference between Benito Ya's culture and American culture. He noted that there was a significant difference in the age of consent and issues regarding sexuality. He stated that it took multiple conversations for Benito Ya to realize that his relationship with his daughter was unlawful and forbidden. Benito Ya's counsel also

explained that although Benito Ya may have seemed as if he was not cooperating during the presentence investigation, it was more likely that Benito Ya did not understand what was happening.

Benito Ya also addressed the court during the sentencing hearing. He stated that he knew what he did was bad. He also asked for an opportunity to be allowed to remain in the United States so that he can work. He also reiterated that he "will not do this, again."

Prior to imposing a sentence, the court expressed its concerns about multiple issues that were included in the PSR. The district court was concerned that Benito Ya believed D.B.T. consented to the sexual relationship with Benito Ya. The court then stated that the crimes involved "depraved and despicable conduct by [Benito Ya] towards [his] own daughter." Then the district court explained that it was "not aware of any nationality, or culture, or nation that condones this type of conduct. It is disgusting and evil. . . . Now, in her teenage years, she must raise a child on her own without appropriate support, all because of your criminal and despicable actions." The district court also observed that the actions toward D.B.T. are "so wrong, they are almost beyond human comprehension and they are offensive to this Court, and the citizens of Dodge County, and the citizens of the State of Nebraska."

The district court specifically indicated that it had considered the nature and circumstances of the crime and the history, character, and condition of Benito Ya. The district court explained that it considered the PSR and all statements received in the PSR. As to Benito Ya's conviction for first degree sexual assault of a child, the district court sentenced Benito Ya to 75 to 85 years' imprisonment, including a mandatory minimum 15-year sentence. As to his conviction for incest, Benito Ya was sentenced to 18 to 20 years' imprisonment. These sentences were ordered to be served consecutively.

Benito Ya appeals to this court.

## ASSIGNMENTS OF ERROR

Consolidated and restated, Benito Ya assigns and argues that the district court erred in not assuring there was proper translation of the proceedings such that Benito Ya could understand the proceedings, and in failing to preserve the record in the original language spoken for what was said during the proceedings. Benito Ya also assigns and argues that the district court imposed excessive sentences. Benito Ya assigns but does not argue that the district court erred by accepting his plea as having been entered knowingly, voluntarily, and intelligently made. This assignment of error will not be considered. To be considered by an appellate court, the party asserting the alleged error must both specifically assign and specifically argue it in the party's initial brief. *Dycus v. Dycus*, 307 Neb. 426, 949 N.W.2d 357 (2020).

## STANDARD OF REVIEW

Rulings regarding the conduct of fair and impartial hearings rests with the trial court, and its rulings are reviewed for an abuse of discretion. *State v. Sellers*, 279 Neb. 220, 777 N.W.2d 779 (2010).

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Price*, 306 Neb. 38, 944 N.W.2d 279 (2020). An

abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

ANALYSIS

*Translation of Proceedings/Failure to Preserve Record.*

Benito Ya argues that the district court erred in not assuring there was a proper translation of the proceedings for him. However, Benito Ya made no objection during the proceedings with respect to the interpreter and the translation given to him. In fact, Benito Ya, both personally and through counsel, repeatedly represented that he understood the proceedings throughout the course of the plea hearing and sentencing. Having made no pertinent and timely objections during those hearings, his claim on appeal with respect to the translation services provided by the interpreter is waived and is not preserved for appellate review. Similarly, to the extent that he argues that the interpreter was unqualified since she was not certified, he has waived any error by not objecting to her services before the district court. See *State v. Garcia*, 27 Neb. App. 705, 936 N.W.2d 1 (2019). See, also, *State v. Swindle*, 300 Neb. 734, 915 N.W.2d 795 (2018) (failure to make timely objection waives right to assert prejudicial error on appeal); *State v. Pereira*, 284 Neb. 982, 824 N.W.2d 706 (2013) (generally, where no objection is made at sentencing hearing when defendant is provided opportunity to do so, any claimed error is waived and is not preserved for appellate review). We note that pursuant to Neb. Rev. Stat. § 25-2405 (Reissue 2016), uncertified interpreters are to be administered an oath at any hearing in which they provide interpretation services. Our record does not reveal whether such an oath was administered at the plea hearing or sentencing. However, even if no oath was administered, Benito Ya made no objection to the hearings moving forward without such an oath. Accordingly, we find that Benito Ya's assignment of error regarding the provision of interpretation services to be waived.

Benito Ya further argues that the district court erred by failing to preserve what was said during the court proceedings in the original language it was said in, in order to ensure the accuracy of the translations provided to Benito Ya and to the court. Arguably, Benito Ya has also waived this claimed error. Our record demonstrates no request by Benito Ya that a record be made of the actual exchange in K'iche', nor does he explain how the court reporter is supposed to make a verbatim record of a language that he or she does not understand. However, since the record complained of has been produced following the proceedings, we will address this aspect of his assigned error.

Benito Ya cites to no case law or other authority for the proposition that a court is required to preserve the record as he suggests. The Nebraska Supreme Court has previously explained that there is no constitutional right to a "flawless" interpretation. *State v. Martinez*, 306 Neb. 516, 528, 946 N.W.2d 445, 457 (2020). Minor or isolated inaccuracies, omissions, interruptions, or other defects in translation are inevitable and do not warrant relief where the translation is on the whole reasonably timely, complete, and accurate, and the defects do not render the proceeding fundamentally unfair. *Id.*

Neb. Rev. Stat. § 25-2401 et. seq. (Reissue 2016) addresses the provision of interpretation services, the qualifications required for interpreters and safeguards the court should utilize to ensure accurate interpretation. In practice, interpreters' translation of English language statements to a litigant in a language they understand are not audible to the court reporter or others in the

courtroom. If Benito Ya was not able to understand what the interpreter was translating for him, it was incumbent upon him to inform the interpreter or counsel of his lack of understanding. Our record displays occasions where this happened. The hearing was paused so as to allow the interpreter to clarify what the court was saying after inquiries were made. Moreover, the record demonstrates that the interpretation given to Benito Ya was understood by him. He appeared to understand the questions asked of him and responded appropriately. Benito Ya's counsel indicated that Benito Ya understood what occurred and had answered all of his questions. Moreover, Benito Ya fails to indicate any inaccuracies contained within the record. Rather, he merely questions whether the record was accurate. Accordingly, based on the record before us, we find this error to be without merit.

*Excessive Sentence.*

In his brief on appeal, Benito Ya argues that the district court abused its discretion in imposing an excessive sentence. Specifically, Benito Ya argues that the district court imposed an excessive sentence because it was prejudiced against him and relied on its personal bias in sentencing him. In addition, Benito Ya argues that the court failed to consider his social and cultural background prior to imposing the sentences.

When imposing a sentence, a sentencing judge should customarily consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017). However, the sentencing court is not limited to any mathematically applied set of factors. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

First degree sexual assault of a child is a Class IB felony, punishable by a mandatory minimum sentence of 15 years and a maximum of life imprisonment. § 28-319.01. Incest with a person who is under 18 years of age is a Class IIA felony, punishable by between 0 and 20 years. See § 28-703. The district court sentenced Benito Ya to 75 to 85 years' imprisonment on his conviction for first degree sexual assault of a child and to 18 to 20 years' imprisonment on his conviction for incest. Benito Ya concedes that his sentences are within the statutory limits. Because Benito Ya's sentences fall within the statutorily provided range, we review the sentences imposed only for an abuse of discretion. *State v. Dixon*, 286 Neb. 334, 837 N.W.2d 496 (2013).

Benito Ya argues that the district court abused its discretion because it did not consider Benito Ya's cultural and social background prior to sentencing. He also argues that the district court's comments prior to sentencing show that it relied on personal bias or prejudice in determining his sentences. We find no abuse of discretion in the sentences imposed.

Benito Ya made similar statements to the probation officer as were argued by counsel at sentencing. He commented to the probation officer that "we" do not understand his culture, implying that females, in his culture, are routinely subjected to unwanted intercourse with their fathers. However, he acknowledged that his female relatives were not subjected to such abuse. Moreover, D.B.T., in her statement provided to the probation officer, talked of the nightmare she suffered through and the shame she now carries. Benito Ya also expressed his belief that his

daughter had freely consented to having sexual intercourse with him. In contrast, D.B.T. talked of the pattern of ongoing verbal, emotional, physical, and sexual abuse she had been subjected to. The district court noted that it had reviewed the PSR which contained information regarding Benito Ya's culture and, in fact, explicitly stated that it had considered Benito Ya's cultural background. Given the court's sentencing decision, however, it clearly found that Benito Ya's argument regarding his culture provided little mitigation for his abusive behavior which included physical and forcible sexual assault. We find that the court did not abuse its discretion in this regard.

Moreover, we are not persuaded by Benito Ya's argument that the district court relied on personal bias or prejudice in sentencing Benito Ya. The court characterized Benito Ya's criminal acts as "depraved and despicable." We find no inaccuracy in the court's description. While the court stated that it was unaware of any culture which "condones this kind of conduct," we cannot find that this statement indicates any type of racial or cultural animus. The court had before it conflicting statements regarding the acceptability of such behavior in Benito Ya's cultural background and chose to credit the evidence that such behavior is not common or acceptable. The probation officer noted that Benito Ya gave inconsistent and evasive answers during the course of the interview he conducted with him during the preparation of the PSR. For example, Benito Ya initially contended that he had only been in the United States since 2018. However, when confronted with his 2006 conviction in Florida and the record of his deportation in 2018, he acknowledged that he had been in this country for an extended period previously, though he continued to maintain that he voluntarily left the United States in 2018 prior to reentering, this time bringing D.B.T. with him. Based on the totality of the record, we find no basis to Benito Ya's allegation that the sentences were motivated by bias or prejudice.

Upon our review, we cannot find that the district court abused its discretion in sentencing Benito Ya to an aggregate sentence of 93 to 105 years' imprisonment. Benito Ya's crimes were serious, violent, and ongoing. Testing revealed him to be at high risk to commit further offenses involving sexual assault. There is nothing in the record to suggest that the district court failed to consider the relevant statutory factors. Instead, the record reflects that the court considered all the facts and circumstances surrounding Benito Ya's life and made a subjective judgment. See *State v. Stabler*, 305 Neb. 415, 940 N.W.2d 572 (2020). The sentences are within statutory limits and are supported by the serious nature of the offenses.

CONCLUSION

We find no abuse of discretion with respect to the preservation of the record. We further find no abuse of discretion in the sentences imposed. Accordingly, we affirm.

AFFIRMED.