IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. TAYLOR

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

BERRY L. TAYLOR, APPELLANT.

Filed January 5, 2021.    Nos. A-19-1113, A-19-1114.

Appeals from the District Court for Douglas County: GARY B. RANDALL, Judge. Affirmed as modified.

Thomas C. Riley, Douglas County Public Defender, and Rebekah S. Keller for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

MOORE, BISHOP, and WELCH, Judges.

MOORE, Judge.

## I. INTRODUCTION

In these consolidated cases, Berry L. Taylor appeals from his convictions and sentences in the District Court for Douglas County, for domestic assault, robbery, and strangulation. Taylor challenges the sufficiency of the evidence to support his convictions for robbery and strangulation and the sentences imposed for his convictions. He also asserts that he received ineffective assistance of counsel. For the following reasons, we affirm as modified.

## II. BACKGROUND

### 1. CASE NO. A-19-1113

On January 16, 2019, Omaha police officers were dispatched to investigate a domestic incident and met with Kyara Williams at a hospital. Williams told officers that she was in a dating relationship with Taylor and they were having a conversation when Taylor became angry and

- 1 -

pushed her onto the bed and began to choke her. Officers observed a scratch on the left side of Williams' neck, near the back of her hairline, which was consistent with the assault described.

On April 9, 2019, an information filed in the district court charged Taylor with one count of strangulation, a Class IIIA felony under Neb. Rev. Stat. § 28-310.01(1) and (2) (Supp. 2019). An amended information was filed on August 30 charging Taylor with one count of third degree domestic assault, a Class I misdemeanor. Taylor entered a guilty plea on the same day. The district court advised Taylor of his rights and explained that Taylor would face a maximum penalty of 1 year's imprisonment, a $1,000 fine, or both. Taylor acknowledged the possible penalty and that it could run consecutive or concurrent to his sentence in case No. A-19-1114, agreed that he had sufficient time to meet with his attorney and was satisfied with the attorney services provided, and denied believing that his plea would result in a particular sentence.
The district court found Taylor guilty of the charge.

### 2. CASE NO. A-19-1114

An information also filed on April 9, 2019, charged Taylor with one count of robbery, a Class II felony, under Neb. Rev. Stat. § 28-324(1) (Reissue 2016), and one count of strangulation, a Class IIIA felony, under § 28-310.01(1) and (2). At a pretrial hearing on June 18, Taylor waived his right to a jury trial in favor of a bench trial. The court confirmed that Taylor was informed he had a right to a jury trial and that he waived his right on his own volition. The bench trial was held on August 22. The following evidence was heard at trial.

Bernard Fraction testified that on January 27, 2019, he contacted law enforcement because he had been assaulted by Taylor. Fraction testified that Taylor lives in the same apartment building as him and gave him a ride to an ATM in exchange for Fraction paying Taylor $10, an arrangement they made over the phone. Fraction noted that when Taylor picked him up in the parking lot of their apartment building, a girl was in the car with him. Fraction described the ride as unpleasant, noting that Taylor seemed upset about something.

Fraction testified that when they arrived at the ATM, Taylor pulled over so that Fraction could get out of the car and make the withdrawal. When Fraction gave Taylor the agreed-upon $10 for the ride, Taylor demanded more and Fraction refused. Fraction testified that Taylor did not take him home immediately after that, and made a couple of stops before returning to the apartment. During this time, Taylor ignored Fraction's requests to take him home, and Fraction testified that Taylor was being erratic and talking loudly with the girl in the car.

Fraction testified upon returning to the apartment building, Taylor blocked him from going into his apartment. Taylor then hit Fraction in the mouth with a closed fist causing him to bleed and then started choking him from behind while searching his pockets for money. Fraction testified that Taylor continued to choke him for around a minute, but he did not lose consciousness. Fraction felt like he was not able to breathe. Fraction further testified that he suffered injuries as a result of the assault, consisting of a swollen jaw and neck, loose teeth, and bleeding from the mouth. Fraction estimated that Taylor took around $60 from him, based on the amount of money Fraction took out of the ATM.

On cross-examination, Fraction testified that the incident occurred around 5:30 p.m., "according to the police." He also indicated that it was during daylight hours, or in the early evening. When confronted with the police report which stated the incident occurred around 5 a.m.,

Fraction testified that the police report was incorrect. Although the police report indicates that Fraction did not report the choking incident, Fraction again testified that the report was untrue or misleading. On cross-examination, Fraction denied that he had asked Taylor to give him a ride to pick up drugs.

Omaha Police Officer Brett Wagner testified that around 5:30 in the morning on January 27, 2019, he was dispatched to Fraction's apartment building to investigate an assault. Upon arrival, Wagner observed that Fraction had a swollen and bleeding lip, and that there was blood on the floor outside Fraction's door. Wagner testified that he believed the assault occurred around 5 a.m. Wagner confirmed that at the time he made the report, Fraction had not reported that he had been strangled by Taylor. Taylor offered an incident report from the Omaha Housing Authority, which noted the assault occurred at 5:30 a.m., and the Omaha Police Department incident report which provided the time of the incident as 5 to 5:15 a.m.

Taylor testified in his own behalf. Taylor testified that in the early morning hours of January 27, around 1:30 to 2 a.m., he received a call from Fraction asking Taylor to pick up a package for him and take him to an ATM. Taylor said he picked up a small, thumb-sized package, and testified that he was "sure that from just the call and the person, that it was a drug transaction." Taylor testified that he paid $60 to get the package for Fraction.

After that, Taylor picked Fraction up from the apartment building and went to the ATM. Taylor requested $10 for the ride and $60 to be reimbursed for the package he picked up. Taylor testified that the two argued in the car and into the apartment building because Fraction refused to pay $60. Taylor testified that Fraction challenged him to a fight, and that he hit Fraction on the mouth because he felt that Fraction was going to attack him. Fraction fell to the ground, and Taylor testified that he put Fraction in a choke hold to restrain him but that he did not intend to strangle him. Taylor testified that Fraction continued to talk while being held in the choke hold. Taylor testified that after two to three minutes of holding Fraction in the choke hold, Fraction agreed to give Taylor the money in exchange for being released from Taylor's hold. Taylor denied applying any pressure during the hold. Taylor testified that Fraction eventually gave him the $60 and then he left. Taylor also testified that the incident did not occur at 5 p.m., disagreeing with Fraction's testimony.

On cross-examination, Taylor agreed that when he hit Fraction in the mouth, Fraction had not injured or made physical contact with him.

Taylor called Wanda Ammons, who was present in the apartment building at the time of the incident. Ammons testified that another woman was also present watching the altercation, but she did not identify her by name. Ammons testified that she saw both Taylor and Fraction punching each other. Ammons testified that she did not see whether Taylor held Fraction in a choke hold, because Taylor had his back to her. Ammons further testified that she saw Fraction hand Taylor money, and that Taylor did not take it forcefully. Ammons could not remember the date and time of the incident, but thought it likely happened between 9 to 10 p.m.

On August 30, 2019, the district court entered a guilty verdict on both counts against Taylor.

### 3. SENTENCING

The district court simultaneously sentenced Taylor on both cases on October 24, 2019. In case No. A-19-1113, Taylor was sentenced to 1 year's incarceration, to be served consecutive to the sentences imposed in case No. A-19-1114. He was given credit of 229 days previously served against this sentence. In case No. A-19-1114, Taylor was sentenced to 5 to 7 years' incarceration for the robbery charge and 3 to 3 years' incarceration on the strangulation charge, to run consecutively to each other and to the sentence imposed in case No. A-19-1113.

## III. ASSIGNMENTS OF ERROR

Reordered and restated, Taylor assigns that the evidence was insufficient to support the convictions for robbery and strangulation and that the sentences imposed were excessive. In addition, he assigns that his trial counsel was ineffective because he (1) failed to properly advise Taylor about his right to a jury trial, (2) failed to call all known witnesses, (3) failed to fully and completely cross-examine Officer Wagner, (4) failed to properly prepare Taylor for direct examination, (5) failed to fully and completely cross-examine Fraction, (6) failed to object to inadmissible and irrelevant testimony, (7) failed to object to inadmissible leading questioning of Fraction, (8) failed to properly advise Taylor on the decision to testify at trial, (9) failed to file a motion for mutual and reciprocal discovery, (10) emphasized irrelevant, negative character evidence at sentencing, and (11) failed to correct the district court's misapplication of jail credit to which Taylor was entitled. Taylor further asserts that the cumulative effect of all the errors showed trial counsel's overall performance was so deficient it denied him the effective assistance of counsel.

## IV. STANDARD OF REVIEW

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Garcia*, 302 Neb. 406, 923 N.W.2d 725 (2019). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*.

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *Id*. An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Martinez*, 306 Neb. 516, 946 N.W.2d 445 (2020).

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *Id*. We determine as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *State v. Garcia, supra*.

## V. ANALYSIS

### 1. SUFFICIENCY OF EVIDENCE

Taylor challenges the sufficiency of the evidence to convict him of robbery and strangulation.

### (a) Robbery

Under § 28-324, a person commits robbery if, with the intent to steal, he forcibly and by violence, or by putting in fear, takes from the person of another any money or personal property of any value whatever. Taylor contends that the State failed to prove beyond a reasonable doubt that Taylor took money or property from Fraction without his consent and failed to prove that Taylor intended to steal the money. In support of his argument, Taylor points to the disputed testimony regarding whether Fraction willingly gave Taylor the money. While Fraction testified that Taylor took the money out of Fraction's pants pocket while Taylor was maintaining a choke hold on him, Taylor and Ammons testified that Fraction took the money out of his own pocket and handed it to Taylor. In addition, Taylor testified that he and Fraction agreed that Fraction would pay him $60 as reimbursement for picking up a package for Fraction and $10 for the ride to the ATM. However, Fraction testified that he only agreed to pay $10 for the ride; there was no other agreement for additional payment.

As established above, an appellate court does not resolve conflicts in the evidence or pass on the credibility of the witnesses; such are matters determined by the finder of fact. See *State v. Garcia, supra*. Apparently, the district court found that Fraction's testimony was more credible than that of Taylor and Ammons. Thus, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could find that Taylor intended to steal money from Fraction when, after hitting Fraction in the mouth, Taylor then placed Fraction in a choke hold and forcibly removed the money from Fraction's pocket. The district court did not err in finding that the State proved the elements of the crime of robbery.

### (b) Strangulation

Under § 28-310.01(1), a person commits the offense of assault by strangulation or suffocation if the person knowingly and intentionally impedes the normal breathing or circulation of the blood of another person by applying pressure on the throat or neck of the other person. Further, under § 28-310.01(2), an offense is committed under this section regardless of whether a visible injury resulted.

Taylor argues that the State failed to establish beyond a reasonable doubt that an assault by strangulation occurred. Taylor argues that, although Fraction testified that he was choked by Taylor and his breathing was restricted, this was refuted by the fact that such choking was not noted in the police report. Taylor also notes that although he admitted to holding Fraction in a choke hold, he did not apply pressure and Fraction was able to talk and move during the hold.

As noted above, this court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. See *State v. Garcia, supra*. The district court apparently found that Fraction's testimony was more credible. A rational trier of fact could have found the elements of the crime of strangulation were proven. Thus, viewing the evidence in the light most

favorable to the prosecution, the district court did not err in finding that Taylor committed the crime of strangulation.

## 2. EXCESSIVE SENTENCE

Taylor argues that the district court abused its discretion by imposing an excessive sentence, claiming that the court failed to adequately consider the mitigating factors. Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Becker,* 304 Neb. 693, 936 N.W.2d 505 (2019). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id*.

In case No. A-19-1113, Taylor was sentenced to 1 year's incarceration for third degree domestic assault. Third degree domestic assault is a class I misdemeanor, punishable by a maximum of 1 year's imprisonment or a $1,000 fine, or both. § 28-323(4) and (5); Neb. Rev. Stat. § 28-105(1).

In case No. A-19-1114, Taylor was sentenced to 5 to 7 years' incarceration for the robbery charge and 3 to 3 years' incarceration for strangulation, to run consecutively to each other and to the sentence imposed in case No. A-19-1113. Robbery is a Class II felony, punishable by a maximum of 50 years' imprisonment and a minimum of 1 year's imprisonment. § 28-324(2); § 28-105(1). Strangulation is a class IIIA felony, punishable by a maximum of 3 years' imprisonment with no minimum, and 9 to 18 months' postrelease supervision if imprisonment is imposed, a $10,000 fine, or both. § 28-310.01(3); § 28-105 (1). Thus, Taylor was sentenced within the statutory limits in both cases and we look to the other factors outlined above to determine whether the district court abused its discretion in sentencing Taylor.

At the time the presentence investigation report (PSI) was prepared, Taylor was 35 years old. Taylor had one adjudication in juvenile court, and he was satisfactorily discharged from juvenile probation. Taylor also has an adult criminal record dating back to 2001, which included convictions for failure to appear (twice), trespassing, theft by shoplifting, carrying a concealed weapon, disorderly conduct (twice), theft by receiving stolen property, assault and battery, possession of marijuana less than one ounce (three convictions), violation of a protection order (unsatisfactorily released from probation), false information (twice), possession of a machine gun, short rifle, or short shotgun (probation revoked and sentence to 1 year's incarceration), third degree assault, and numerous traffic-related offenses.

Taylor scored in the medium risk range or higher in every category on his Level of Service/Case Management Inventory report. Taylor scored as a "very high risk" overall. Taylor scored in the maximum risk for violence and antisocial behavior on the Substance Abuse Questionnaire (SAQ), and in the problem risk range for alcohol, drugs, and aggressiveness. The PSI also indicated that Taylor has significant mental health issues that need to be addressed.

Taylor did not graduate from high school after being expelled in the ninth grade from two schools and failing to enroll in the alternative school where he was placed. Taylor expressed a

desire to obtain his GED, but does not believe he is capable of doing so. At the time of the PSI, Taylor was unemployed due to his incarceration. Taylor indicated that prior to his incarceration, he held two different positions for a few months each, but had not held any employment between 2012 and 2017.

The probation officer recommended a straight sentence of incarceration, due to Taylor's high risk to reoffend, failure to successfully complete probation in the past, and continued involvement in negative situations.

Taylor argues that the district court did not meaningfully consider the relevant sentencing factors, and that if the court had properly considered all factors, he would've received a lesser sentence. Specifically, Taylor argued that he was still relatively young and consecutive sentences of 1 year, 3 years, and 5 to 7 years were counterproductive to allowing him to find treatment and attempt to be a productive member of society. Taylor also argues that outside of incarceration he would be able to receive treatment for his mental health and substance abuse issues.

The record shows that the district court clearly considered all of the relevant factors. It is not the function of an appellate court to conduct a de novo review of the record to determine whether a sentence is appropriate. *State v. Montoya*, 305 Neb. 581, 941 N.W.2d 474 (2020). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *State v. Becker*, 304 Neb. 693, 936 N.W.2d 505 (2019). Based on this record, we cannot say that the district court abused its discretion by imposing excessive sentences.

Taylor also argues that the district court failed to properly apply the credit for time previously served. The court determined that Taylor was entitled to 229 days of credit and applied that credit toward the sentence in case No. A-19-1113, the domestic assault conviction. Taylor asserts that the credit should have been applied to the other sentences in case No. A-19-1114, reasoning that because he was sentenced to 1 year's imprisonment on the domestic assault conviction, he only needed 190 days of credit to be applied to that case. Taylor bases this argument on the assumption that he would receive good time credit while incarcerated. See Neb. Rev. Stat. §§ 83-1,107 and 47-502 (Reissue 2016) (provisions for sentence reduction).

Under Neb. Rev. Stat. § 83-1,106 (Reissue 2014), whether a defendant is entitled to credit for time served and in what amount are questions of law, subject to appellate review independent of the lower court. *State v. McCulley*, 305 Neb. 139, 939 N.W.2d 373 (2020). The credit for time served to which a defendant is entitled is an absolute and objective number that is established by the record. § 83-1,106. *State v. McCulley, supra*. Although under § 83-1,106 an offender shall be given credit for time served as a result of the charges that led to the sentences, presentence credit is applied only once. Therefore, when consecutive sentences are imposed for two or more offenses, periods of presentence incarceration may be credited only against the aggregate of all terms imposed. *State v. Williams*, 282 Neb. 182, 802 N.W.2d 421 (2011).

The record shows that Taylor was confined 229 days awaiting trial and sentencing for both cases. He was sentenced to incarceration at the Department of Correctional Services in both cases and all sentences were imposed consecutively. Because the possibility exists that Taylor's actual time served for the misdemeanor charge in case No. A-19-1113 could be less than the credit he is

due, we modify the sentencing orders to apply the 229 days of credit to the aggregate of the sentences in case No. A-19-1114 instead of to the sentence in case No. A-19-1113.

### 3. INEFFECTIVE ASSISTANCE OF COUNSEL

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record, otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. See *State v. Garcia*, 302 Neb. 406, 923 N.W.2d 725 (2019). An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *Id*. The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved; the determining factor is whether the record is sufficient to adequately review the question. *Id*. Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal depends upon the sufficiency of the record to address the claim to determine whether a defense counsel's performance was deficient and whether the defendant was prejudiced by the alleged deficient performance. *State v. Thiesen*, 306 Neb. 591, 946 N.W.2d 677 (2020). The record on direct appeal is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id.* When a claim of ineffective assistance of trial counsel is raised on direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance. *State v. Devers*, 306 Neb. 429, 945 N.W.2d 470 (2020).

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Iddings*, 304 Neb. 759, 936 N.W.2d 747 (2020). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *State v. Anderson*, 305 Neb. 978, 943 N.W.2d 690 (2020). To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

### (a) Failure to Advise About Right to Jury Trial

Taylor argues that his trial counsel did not adequately advise him regarding his right to a jury trial and was deficient in allowing him to waive his right to a jury trial. The record is sufficient to review and refute this claim. Taylor was advised by the court of his right to a jury trial which he indicated that he understood. Taylor affirmatively waived that right. Taylor's counsel advised the court that they discussed the waiver and that Taylor understood it. Taylor denied that anyone attempted to threaten or in any way force him to make that decision. Taylor affirmed that his

waiver was of his own will and volition. Taylor's claim that his trial counsel did not adequately advise him regarding his right to a jury trial fails.

## (b) Failing to Call All Known Witnesses

Taylor argues that trial counsel failed to call all potential witnesses on Taylor's behalf, specifically referring to the other woman who Ammons testified was present during the altercation between Taylor and Fraction. Taylor argues that this witness would have corroborated Ammons' testimony and therefore the district court would not have relied on Fraction's testimony to support the conviction. The record on direct appeal is insufficient to determine whether this potential witness could be identified and located, whether trial counsel attempted to contact this potential witness, what the witness may have testified to, or why trial counsel chose not to call this witness. Thus, we are unable to address this claim of ineffective assistance of counsel on direct appeal.

## (c) Failing to Fully Cross-Examine Wagner

Taylor argues that trial counsel failed to fully and completely cross-examine Officer Wagner. Specifically, Taylor notes the discrepancies between Wagner's and Fraction's testimony about the time of day during which the incident occurred, and alleges that trial counsel "failed to fully explore the extent of the differences in testimony." Taylor argues that Wagner's testimony could have been used to impeach Fraction had those differences been explored further.

The record on appeal is sufficient to refute this claim. Taylor's trial counsel did, in fact, address the discrepancies between the testimony of Wagner and Fraction regarding the time of day the incident occurred. Counsel also explored the issue of whether Fraction reported the choking to Wagner. Taylor has not shown that further cross-examination regarding the inconsistencies in the witnesses' testimony would have resulted in a different outcome. We conclude that Taylor cannot show that trial counsel was deficient in not further cross-examining Wagner, or that Taylor was prejudiced by the lack of any further cross-examination. We reject this claim of ineffective assistance of counsel.

## (d) Failing to Properly Prepare Taylor
## for Direct Examination

Taylor argues that his trial counsel failed to properly prepare him for direct examination. Specifically, Taylor argues the fact that several of his answers at trial were self-incriminating is indicative of trial counsel's failure to adequately prepare him. However, the record is not sufficient to determine whether trial counsel adequately prepared Taylor for cross-examination. Thus, we cannot address this claim on direct appeal.

## (e) Failing to Fully and Completely
## Cross-Examine Fraction

Taylor argues that trial counsel failed to fully and completely cross-examine Fraction. Specifically Taylor asserts that trial counsel focused too much on the inconsistent testimony regarding the time of the incident, when he could have explored other lines of questioning to impeach Fraction, such as the sequence of events, the nature of the physical altercation, and the manner in which the money came into Taylor's possession. Upon our review of the record, it is clear that trial counsel adequately questioned Fraction about all details of the incident including

time of day, inconsistencies between his testimony and the police reports, and the nature of the exchange of money, all of which were disputed by the testimony of others. Taylor has failed to demonstrate that his trial counsel was deficient in this regard. We reject this claim of ineffective assistance of counsel.

### (f) Failure to Object to Inadmissible and Irrelevant Testimony

Taylor assigns that trial counsel failed to raise pertinent objections which resulted in the admission of speculative, narrative, and inadmissible testimony. Specifically, Taylor refers to testimony given by Fraction regarding Taylor's bad mood, that Taylor was acting crazy and erratic, that Taylor was high at the time of the incident, and that Taylor's actions amounted to attempted murder. Taylor does not explain on what specific grounds objections should have been made or that any objections would have been successful. Thus, this claim is insufficiently stated. Further, while some of this testimony was arguably irrelevant, Taylor cannot show a reasonable probability that the outcome of the proceeding would have been different had trial counsel successfully objected to this testimony. Absent a showing to the contrary, it is presumed on appeal that the trial court disregarded all incompetent and irrelevant evidence. See, *In re Interest of Ty M. & Devon M.*, 265 Neb. 150, 655 N.W.2d 672 (2003); *Bornhorst v. Bornhorst*, 28 Neb. App. 182, 941 N.W.2d 769 (2020). Here, the factfinder was the trial judge who presumably rejected any irrelevant testimony. Thus, Taylor cannot establish that he was prejudiced by trial counsel's failure to object to the allegedly irrelevant testimony by Fraction. We reject this claim of ineffective assistance of counsel.

### (g) Failure to Object to Inadmissible and Leading Questioning of Fraction

Similarly, Taylor argues that trial counsel failed to object to inadmissible leading questioning of Fraction. However, Taylor has failed to show that had objections been made and sustained, Fraction's testimony would have been different. Therefore, Taylor cannot show a reasonable probability that the outcome of the proceeding would have been different had objections been made to leading questions and as such, we find that he was not prejudiced by trial counsel's failure to object to the questions. We reject this claim of ineffective assistance of counsel.

### (h) Failure to Fully Advise Taylor

Taylor also argues that trial counsel failed to properly advise Taylor on the decision to testify at trial due to the fact that Taylor made several self-incriminating statements at trial. Taylor specifically notes his testimony regarding his involvement in an illegal drug purchase. The record is insufficient to address this claim on direct appeal.

### (i) Failure to File Motion for Mutual and Reciprocal Discovery

Taylor next argues that trial counsel's performance was deficient because counsel failed to file any pre-trial motions, specifically a motion to obtain mutual and reciprocal discovery. Taylor points to several types of evidence that may have been included in such discovery. He contends that this failure severely prejudiced his ability to effectively defend himself from the charges at

hand. Both Taylor and the State suggest that the record is insufficient to address this claim on direct appeal. We agree.

### (j) Improper Emphasis of Irrelevant and Negative Character Evidence

Taylor argues that trial counsel's representation of him was deficient because counsel emphasized Taylor's drug connections and other negative character evidence at sentencing. Taylor also claims that trial counsel should have pointed out the discrepancy in Fraction's statements between statements in the PSI and his testimony at trial. However, our review of the sentencing hearing shows that it was the trial judge, not defense counsel, who initially brought up that the incident occurred as part of a "drug deal." Counsel admitted that Taylor testified to this, but emphasized that such testimony was negative toward Fraction and suggested that he was lying about whether Taylor stole money from him. We see no other reference to negative character evidence by trial counsel at sentencing, and in fact, counsel argued mitigating factors. And, the trial court had the PSI before it at the time of sentencing and was able to consider the discrepancies between Fraction's statements in the PSI and his trial testimony. The record is sufficient to determine that Taylor's counsel was not deficient in connection with any comments made at sentencing. We reject this claim of ineffective assistance of counsel.

### (k) Failure to Correct District Court's Misapplication of Jail Credits

Taylor argues that trial counsel was deficient in failing to correct the district court's sentence when it ordered all of Taylor's credit for time served to be applied to the misdemeanor domestic assault conviction. Because we have modified the sentences to apply the credit for time served to the felony convictions in case No. A-19-1114, we need not address this claim further.

### (l) Cumulative Errors

Finally, Taylor argues that even if any of the errors above were not enough to establish ineffective assistance of counsel, the cumulative effect of all of the errors are indicative of ineffective assistance when taken as a whole. As we have addressed above, we find that Taylor's arguments regarding ineffective assistance of counsel are either without merit or the record is insufficient to address. Given our findings above, we cannot say that the cumulative effect of Taylor's asserted errors shows an ineffective assistance of counsel. Therefore, we find no cumulative error in counsel's performance.

### VI. CONCLUSION

Viewing the evidence in the light most favorable to the prosecution, the evidence was sufficient to find Taylor guilty of the crimes charged. We find no abuse of discretion by the district court in the sentences imposed or the determination, however, we modify the sentences to apply the credit for time served to the sentences in case No. A-19-1114 instead of case No. A-19-1113. Accordingly, we affirm the judgment and sentences of the district court as modified. Further, we conclude that the following claims of ineffective assistance of trial counsel are without merit: failure to properly advise Taylor regarding his right to a jury trial, failure to fully cross-examine Officer Wagner, failure to fully cross-examine Fraction, failure to object to inadmissible and

irrelevant testimony, failure to object to inadmissible leading questioning of Fraction, emphasis of irrelevant and negative character evidence at sentencing, failure to correct the district court's misapplication of jail credit to which Taylor was entitled, and that the cumulative effect of all errors are indicative of ineffective assistance of counsel. The record is not sufficient to review Taylor's remaining claims of ineffective assistance of counsel.

AFFIRMED AS MODIFIED.