Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/14/2023 09:05 AM CDT

State of Nebraska, appellee, v.
Colin B. Embree, appellant.

___ N.W.2d ___

Filed March 7, 2023.    No. A-22-259.

1. **Rules of Evidence: Appeal and Error.** When the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.

2. ____: ____. A Neb. Rev. Stat. § 27-414 (Reissue 2016) ruling is analogous to a ruling on a motion in limine in that neither constitutes a final ruling on the admissibility of the evidence.

3. **Trial: Witnesses: Appeal and Error.** The exclusion or sequestration of a witness is within the discretion of the trial court, and the ruling on a sequestration motion will not be overturned absent evidence of prejudice to a moving party.

4. **Rules of Evidence: Proof.** While Neb. Rev. Stat. § 27-615(3) (Reissue 2016) requires a showing that a person is essential to the presentation of the cause, it does not require the party to present any evidence on the matter.

5. **Evidence.** Evidence is relevant if it has any tendency to make the existence of any fact that makes the determination of the action more or less probable than without the evidence.

6. **Trial: DNA Testing: Evidence.** Unless the State presents the statistical significance of DNA testing results that shows a defendant cannot be excluded as a potential source in a biological sample, the results are irrelevant.

7. **Sexual Assault: DNA Testing: Evidence: Jurors.** In an alleged sexual assault described by a female victim as involving her genital area and a male perpetrator, the presence of male DNA near the victim's genital area is relevant to whether the assault occurred as the victim described, and such evidence is not outweighed by a danger of confusing the

issues or misleading the jurors even if the DNA is of insufficient quantity or quality to obtain a profile.

8. **Trial: Prosecuting Attorneys: Appeal and Error.** An objection made during closing arguments without a motion for mistrial does not preserve any error for appellate review resulting from the prosecutor's remarks.

9. **Constitutional Law: Jury Trials: Appeal and Error.** Although one or more trial errors might not, standing alone, constitute prejudicial error, their cumulative effect may be to deprive the defendant of his or her constitutional right to a public trial by an impartial jury.

10. **Effectiveness of Counsel: Appeal and Error.** A defendant must specifically allege deficient performance of counsel, and the appellate court will not scour the remainder of the brief in search of such specificity.

Appeal from the District Court for Nemaha County: JULIE D. SMITH, Judge. Affirmed.

Ryan P. Watson, of Wagner, Meehan & Watson, L.L.P., for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

MOORE, RIEDMANN, and BISHOP, Judges.

RIEDMANN, Judge.

## I. INTRODUCTION

Colin B. Embree was convicted by a jury of first degree sexual assault in the district court for Nemaha County. Embree appeals his conviction and alleges several errors challenging the district court's sequestration order and evidentiary rulings. He also asserts he received ineffective assistance of counsel. We find no merit to the arguments raised on appeal; therefore, we affirm the conviction.

## II. BACKGROUND

On March 21, 2020, the victim, S.J., who was born in 2001, went to the house of her father in Auburn, Nebraska, at the behest of her stepmother. S.J.'s stepmother relayed to S.J. that

her cousin, Embree, was coming to visit. Shortly after S.J.'s arrival, her boyfriend at the time, Dominick M., arrived at the house. S.J., her father and stepmother, Embree, and Dominick then walked to a neighbor's house where everyone except Dominick consumed alcohol, and they all got in a hot tub.

After leaving the neighbor's house, S.J. stopped at her car on the way back to her father's house to get some dry clothes, including a pair of blue shorts. She wore the shorts without underwear that night, which was a usual practice for her. After changing into the dry clothes, she went into the living room where her two sisters and a neighbor girl were sleeping. S.J. lay down in front of the couch and fell asleep sometime between 12:30 and 12:45 a.m. Dominick left at that time.

S.J. stated that she woke up around 2:30 a.m. with someone penetrating her vagina from behind. She tried to push the individual off, but he pinned her arms. After pulling away, she saw Embree at her feet. She got up, grabbed her phone and shoes, and left through the back door of the house. She believed Embree followed her to the door, telling her to wait for him, but he did not leave the house after her.

Once outside, S.J. called Dominick and pled for him to pick her up because she did not feel safe. She also sent multiple text messages to him and "FaceTimed" her cousin, Jayden F., who testified that when she answered, she heard S.J. crying and claiming Embree "raped" her. Jayden then ran to S.J.'s father's house, which was only a short distance away.

According to Dominick, he arrived within 5 minutes of S.J.'s phone call. S.J. was in the driveway, crying uncontrollably and emotionally distraught. After S.J. told Dominick that Embree raped her, Dominick ran inside the house to alert S.J.'s father and stepmother, but he could not wake her father, and her stepmother stated, "That could never happen. Tell her to get back inside."

Dominick drove S.J. and Jayden to Nemaha County Hospital (NCH). According to Dominick and Jayden, S.J. acted erratically during the car ride. She tried to tie the strings of her

sweatshirt around her neck, tried to jump out of the moving car, cried uncontrollably, and kept repeating that her family would never believe her and would blame her for what happened. When they arrived at NCH, S.J. tried to run away, but Jayden convinced her to go inside.

At NCH, S.J. was medically screened by a physician assistant, Alan Smyth, for any life-threatening injuries. According to Smyth, NCH did not have the facilities to conduct a sexual assault nurse examination (SANE exam), so he contacted a hospital in Lincoln, Nebraska, that conducted such exams. Smyth also stated he did not question S.J., but she told him she was sexually assaulted. Someone at NCH contacted law enforcement, and Deputy Harold Silvey made contact with S.J., Jayden, and Dominick shortly after their arrival.

Nancy Pew conducted the SANE exam at the Lincoln hospital. She is a certified sexual assault nurse examiner. As such, she conducts sexual assault examinations, which consist of interviewing the reporting person, performing forensic testing, and explaining reporting options.

Pew testified that during the SANE exam of S.J., she obtained a general description of the sexual assault from S.J. Pew then collected evidence from S.J. She swabbed multiple areas on S.J. for DNA, including vaginal-cervical, anal-rectal, external genitalia, and mons pubis. She collected S.J.'s blue shorts for testing. Pew indicated that although S.J. had consumed alcohol in the last 12 hours, she was alert throughout the SANE exam. S.J. did not present with any physical injuries, which Pew testified was common in her experience conducting SANE exams. Pew turned over all the evidence she collected to law enforcement, and it was taken to the Nebraska State Patrol Crime Laboratory.

Silvey informed Deputy Nate Boden of S.J.'s disclosure. Boden proceeded to S.J.'s father's residence to arrest Embree, arriving about 5 a.m. on the morning of the assault. When Boden arrived, Embree and the three young girls were all still asleep in the living room. After interviewing S.J.'s stepmother,

law enforcement transported Embree to the Nemaha County sheriff's office and interviewed him.

Embree told law enforcement that he went into the living room after S.J. had fallen asleep and had lain down on the floor not far from S.J. He told them that after having lain down, S.J.'s stepmother came into the living room and fell asleep on the couch. He denied S.J.'s allegations. Embree was charged with first degree sexual assault and pled not guilty.

After a 4-day jury trial, Embree was convicted of first degree sexual assault. Shortly after his conviction, his counsel moved for a new trial, which was denied. The court sentenced Embree to 10 to 20 years' imprisonment. Embree appeals. Further relevant facts will be discussed below.

## III. ASSIGNMENTS OF ERROR

Embree assigns, renumbered, that the district court erred in (1) finding there was clear and convincing evidence to support prior acts evidence under Neb. Rev. Stat. § 27-414 (Reissue 2016), (2) finding that prior acts evidence was not unduly prejudicial under Neb. Rev. Stat. § 27-403 (Reissue 2016), (3) failing to sequester S.J. from trial, (4) failing to exclude DNA results under § 27-403, and (5) allowing the prosecutor to state Embree was a contributor of the DNA during closing arguments. He also asserts that the district court's errors amount to cumulative error and that he received ineffective assistance of counsel.

## IV. ANALYSIS

### 1. C.B.'s Testimony

#### (a) Additional Facts

After Embree's arrest and S.J.'s disclosure to law enforcement, S.J. received a message over social media from C.B. C.B. explained that she was Embree's former girlfriend and that she believed S.J. was telling the truth about the sexual assault because the same thing happened to her. She had learned of the assault when someone in Embree's family

reached out to her to ask if he was capable of such an act. S.J. responded by asking C.B. to speak with the deputies investigating the case and the county prosecutor.

After meeting with C.B., the State filed a motion to endorse her as an additional witness. The State then requested a hearing on a motion to admit evidence of Embree's prior offenses of sexual assault under § 27-414 (Rule 414 hearing). It aimed to admit evidence of two prior uncharged sexual assaults against a former girlfriend, C.B.

At the Rule 414 hearing, the State called C.B. to testify. She relayed that the first incident occurred in the summer of 2018 while Embree and C.B. were in a dating relationship and living together. C.B. testified she was bending over the couch, when Embree ripped her pants down and penetrated her anally. She said that she told him no and was crying throughout, but he continued for roughly 5 minutes. C.B. testified that after Embree stopped, she went to bed, and that she did not have a reason for not reporting the incident. By December, C.B. and Embree had agreed to break up, so C.B. moved out.

The second incident occurred in May 2019. C.B. was visiting Embree's roommate, with whom she had remained friends. Embree came home earlier than C.B. expected and cornered her in a bathroom. He tried to pull C.B.'s pants down, but she rebuffed his advances. Embree eventually gave up and went to the garage to smoke a cigarette. When she thought he had finished smoking his cigarette, C.B. went out to the garage to smoke one herself. Instead, Embree returned to the garage and tried to kiss her. When she tried to stand up to leave, he pushed her back down, ripped her pants down, and penetrated her anally. She repeatedly told him no and cried. Embree did not stop until he ejaculated.

C.B. testified that she texted a group of her close friends the day after the second incident and told them what had happened. In the group message, she briefly described the event and told them that she did not want Embree to engage in any sexual activity with her. She said she tried to push him

away, but he would only hold her tighter. Embree's counsel objected to the admission of the group message on a lack of foundation because the text message came from an unidentified phone and it was unclear what number the message came from. The district court overruled the objection.

The district court also admitted message screenshots between C.B. and S.J. where C.B. told S.J. the same thing happened to her. Defense counsel objected to the specific message in which S.J. said, "I am beyond sorry this happened to you" as a hearsay. The State conceded it did not offer the exhibit as substantive evidence, so the district court overruled the defense's hearsay objection. The district court found the State had met its burden of establishing by clear and convincing evidence the sexual assaults on C.B. occurred. But it noted it would bifurcate the Rule 414 hearing, so the § 27-403 balancing would occur at trial before C.B. testified.

Prior to C.B.'s testimony at trial, the district court performed the § 27-403 balancing under § 27-414(3). The district court noted that there were dissimilarities between the assaults on C.B. and S.J., but there were more similarities. Overall, the court found that C.B.'s testimony was not more prejudicial than probative, so the evidence was admissible.

C.B.'s testimony mirrored the information she provided at the Rule 414 hearing. She explained that during the assaults, she did not try to fight back and just "froze." She also testified that during her relationship with Embree, he would try to have sexual intercourse with her while she was asleep approximately twice a week, but these interactions were consensual.

### (b) Standard of Review

[1] When the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, we review the admissibility of evidence for an abuse of discretion. *State v. Johnson*, 290 Neb. 862, 862 N.W.2d 757 (2015). A trial court exercises its discretion in determining whether evidence is relevant and whether its prejudicial effect substantially

outweighs its probative value. *Id*. An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*.

### (c) Rule 414 Hearing

When the State aims to admit prior sexual assault offenses to show the propensity of the defendant, § 27-414 provides a roadmap to admission. Under § 27-414(1), the State must prove by clear and convincing evidence that the accused committed the offense. The State must meet this standard of proof at a hearing conducted outside the presence of a jury. See § 27-414(3). *State v. Valverde*, 286 Neb. 280, 835 N.W.2d 732 (2013), allows the district court to bifurcate the § 27-414 ruling, by having the Rule 414 hearing for the State to establish by clear and convincing evidence that the prior offense occurred, then the district court conducts the § 27-414(3) and § 27-403 balancing tests at trial. Embree claims error at both stages.

Embree assigns that the district court erred by finding there was clear and convincing evidence of prior sexual assault offenses because C.B. was not credible and the exhibits received lacked foundation. We determine Embree has failed to preserve this error. See *State v. Martinez*, 306 Neb. 516, 946 N.W.2d 445 (2020), *abrogated on other grounds, State v. Matteson*, 313 Neb. 435, ___ N.W.2d ___ (2023).

In *Martinez*, the defendant filed a motion requesting that the State disclose what evidence it intended to offer at trial of "'other crimes, wrongs and/or acts of the defendant'" and for an evidentiary hearing. 306 Neb. at 520, 946 N.W.2d at 453. At the evidentiary hearing, the State offered the testimony of the victim, who claimed the defendant began sexually assaulting her in Mexico when she was 5 years old, prior to the charged offense. The court held the evidence was admissible under Rule § 27-414. *State v. Martinez, supra*. At trial, the witness testified to the same events. *Id*.

[2] On appeal, the defendant in *Martinez* assigned error to the court's admission of the prior sexual assault, claiming it did not meet the clear and convincing standard. The Nebraska Supreme Court refused to address the issue, finding that the defendant's failure to object to the testimony at trial waived the error. *Id*. It recognized it "makes no difference" that the district court conducted the entire Rule 414 hearing after the trial had begun. *State v. Martinez*, 306 Neb. at 534, 946 N.W.2d at 461. It analogized the § 27-414 ruling to that of a ruling on a motion in limine, stating that neither constitutes a final ruling on the admissibility of the evidence. Therefore, it concluded that when the matter came before the jury, our procedure required an objection in order to provide the trial court with the final opportunity for reconsideration before the evidence reached the jury. *State v. Martinez, supra*.

Here, Embree did not object to C.B.'s testimony at trial. Therefore, he waived any alleged error. But because he did object to the admission of the exhibit reflecting a group text message at trial on the basis of foundation, we address this assigned error.

Embree objected to the group message for a lack of foundation and the text messages between S.J. and C.B. on hearsay at the Rule 414 hearing. At trial, he objected to the group message on foundation: "It's not coming from the correct phone and I can't trust whosever phone this did come from." As to the text messages between S.J. and C.B., Embree's counsel objected on reliability and "improper bolstering." Embree now appeals, assigning only that the district court erred because the exhibits received at the Rule 414 hearing lacked foundation. Because Embree did not make a foundational objection to the text messages between S.J. and C.B. during the Rule 414 hearing, we address only his foundational objection to the group message exhibit. See *State v. Martinez, supra*.

Embree argues that the group message C.B. sent did not have adequate foundation because at the time the exhibit was offered and received, there was no evidence of when the

message was sent and the exhibit itself did not state the time and date of the message. The record refutes this argument.

Prior to offering the exhibit at the Rule 414 hearing, the prosecutor provided C.B. with a copy of the exhibit and asked her to identify it. She responded, "This is a message that I had sent personally to five of my friends the day after it happened." Counsel clarified by asking, "When you say 'it,' the incident, the assault that took place in the garage?" C.B. responded affirmatively. Prior to the exhibit's being offered at trial, C.B. again testified that the exhibit was a message that she sent the day after the second assault. Contrary to Embree's argument, C.B. did provide testimony as to when the message was sent. Because Embree makes no other argument regarding foundational deficiencies of the offer, we find no abuse of discretion in the overruling of Embree's foundational objection. We do not address his reliability and bolstering objections made at trial because he does not assign the ruling on them as error on appeal.

### (d) § 27-414(3) Balancing

Embree argues that C.B.'s testimony was more prejudicial than probative. He contends that unlike what happened to S.J., the two sexual assaults that C.B. testified to involved anal penetration, occurred during a dating relationship, and happened without other people present. He concludes that since S.J. was vaginally penetrated, Embree was her cousin, and other people were asleep in the room while the attack occurred, the prior sexual assault offenses are too dissimilar to be admitted under § 27-414(3). Additionally, he argues the prior acts lack evidentiary support and are too remote from each other.

Under § 27-414(3), the district court must conduct a § 27-403 balancing test and may consider additional relevant factors, such as: "(a) the probability that the other offense occurred, (b) the proximity in time and intervening circumstances of the other offenses, and (c) the similarity of the other acts to the crime charged." The court must admit the evidence of prior sexual assault offenses unless the risk of prejudice

substantially outweighs the probative value of the evidence. See § 27-414(3). Ultimately, the admission of evidence concerning the other conduct should be determined on a case-by-case basis. See *State v. Valverde*, 286 Neb. 280, 835 N.W.2d 732 (2013).

As stated above, Embree did not object to C.B.'s testimony when it was offered at trial. Pursuant to *State v. Martinez*, 306 Neb. 516, 946 N.W.2d 445 (2020), *abrogated on other grounds, State v. Matteson*, 313 Neb. 435, ___ N.W.2d ___ (2023), he therefore waived any error on its admissibility.

## 2. Witness Sequestration

### (a) Additional Facts

Before beginning its case in chief, the State asked that all witnesses be sequestered, except for Boden as a trial assistant and S.J. as the named victim in the information. Embree objected to S.J.'s presence in the courtroom. He argued that under Neb. Rev. Stat. § 27-615 (Reissue 2016), S.J. could not be an essential witness, which would be the only avenue through which she could be excepted from the sequestration order. He also argued that allowing S.J. to sit through the trial would allow her to correct inconsistencies from her own story and bolster her own credibility, which would impact Embree's right to a fair trial.

Relying on *State v. Eynon*, 197 Neb. 734, 250 N.W.2d 658 (1977), the district court allowed S.J. to remain in the courtroom, stating that it would not impact Embree's right to a fair trial.

On appeal, Embree contends that his Sixth Amendment right to a fair trial was infringed when the district court allowed S.J. to remain in the courtroom for the duration of the trial. He argues this allowed her to "craft and reiterate her statements in concert with other witnesses before her." Brief for appellant at 19-20. Embree's argument turns on whether S.J.'s presence was essential because she can only be exempt from the sequestration order if she is essential under § 27-615.

(b) Standard of Review

[3] The exclusion or sequestration of a witness is within the discretion of the trial court, and the ruling on a sequestration motion will not be overturned absent evidence of prejudice to a moving party. See *State ex rel. NSBA v. Miller*, 258 Neb. 181, 602 N.W.2d 486 (1999).

(c) Discussion

[4] For sequestration of witnesses, the general rule is witnesses shall be excluded from the courtroom upon a party's motion or by the court sua sponte. See *id*. Section 27-615 provides three exceptions to the general rule. For purposes of Embree's argument, the general rule does not apply to "a person whose presence is shown by a party to be essential to the presentation of his cause." *Id*. While § 27-615(3) requires a showing that a person is essential to the presentation of the cause, it does not require the party to present any evidence on the matter. See *In re Interest of Gabriel B.*, 31 Neb. App. 21, 976 N.W.2d 206 (2022).

The State argued that S.J. was essential to the presentation of its case because she was the named victim in the information and Embree's defense involved disputing S.J.'s credibility. In *State v. Eynon, supra*, the Supreme Court held that the victim was an essential witness for trial in which the defendant was charged with burglary with intent to commit rape. While not a criminal case, *State ex rel. NSBA v. Miller, supra*, also provides guidance and further supports the holding in *State v. Eynon, supra*. In *State ex rel. NSBA v. Miller, supra*, the Supreme Court relied on *Eynon* in holding that an attorney's former client was an essential witness in a disciplinary proceeding because she was the complaining witness. S.J. is the complaining witness and the victim of the sexual assault; thus, she is an essential witness under both *Eynon* and *Miller*.

Furthermore, S.J.'s attendance at trial did not prejudice Embree's right to a fair trial. See *State v. Bautista*, 193

Neb. 476, 227 N.W.2d 835 (1975) (recognizing that denial of motion to sequester will not be disturbed in absence of prejudice to accused). There was no evidence that S.J. "craft[ed] and reiterate[d] her statements in concert with other witnesses before her." See brief for appellant at 19-20. The only witnesses that testified before her were Pew, Smyth, and a clinical psychologist who had not met with S.J. Furthermore, Embree had an opportunity to challenge S.J.'s credibility on cross-examination if she contradicted her previous deposition testimony or any of the reports provided by law enforcement and medical staff. Since S.J. was an essential witness and Embree did not show how her presence in the courtroom impacted his right to a fair trial, the district court did not abuse its discretion in allowing S.J. to remain in the courtroom for the duration of trial.

Both parties argue the interplay of rights between § 27-615, the Nebraska Crime Victim's Reparations Act under Neb. Rev. Stat. § 81-1848 (Cum. Supp. 2022), and Neb. Const. art. I, § 28. Section 81-1848(1)(c) addresses the rights of *victims*, stating a victim shall have the right

> [t]o be present throughout the entire trial of the defendant, unless the victim is to be called as a witness or the court finds sequestration of the victim necessary for a fair trial. If the victim is to be called as a witness, the court may order the victim to be sequestered.

This allows the court to sequester a victim witness but does not require it. And, as stated above, § 27-615(3) excepts from a sequestration order a witness who is essential to the presentation of the case. Likewise, Neb. Const. art. I, § 28, provides a victim "the right to be present at trial unless the trial court finds sequestration necessary for a fair trial for the defendant." Here, the court found Embree's right to a fair trial would not be compromised by S.J.'s presence; therefore, sequestration was not necessary, and the court did not abuse its discretion in allowing S.J. to remain in the courtroom.

3. DNA EVIDENCE

(a) Additional Facts

Elizabeth Young, a forensic scientist in the biology unit of the Nebraska State Patrol Crime Laboratory, testified to the DNA results at trial. Young tested S.J.'s blue shorts and the swabs collected from the sexual assault kit. S.J. testified that after she put on the blue shorts, she did not come into any physical contact with Embree that would explain his DNA on her shorts before she fell asleep.

There were six sets of swabs tested from S.J.'s sexual assault kit: four sets of swabs of S.J.'s intimate areas and two sets of swabs from the blue shorts she wore that night. Young marked and tested multiple areas on S.J.'s shorts that could potentially produce enough DNA to test. The intimate area swabs and stains on the interior waistband and interior crotch of the shorts tested positive for male DNA.

Young testified that on the interior waistband on the shorts, there was a mixture of DNA that included S.J., Embree, and an unrelated, unknown male. She stated it is 413 billion times more likely the DNA mixture originated from S.J., Embree, and an unknown male rather than S.J. and two unknown males. She also identified a mixture of DNA and spermatozoa with S.J. as the major contributor and two uninterpretable male DNAs in the crotch of the blue shorts and on the mons pubis swabs.

As Young began discussing the results of the other intimate area swabs, Embree objected to her testimony regarding any DNA results of uninterpretable minor contributors. After a lengthy sidebar, the district court decided Young could testify only to the DNA mixtures that included S.J. and two unin-terpretable DNAs. The district court concluded that the DNA mixtures with S.J.'s DNA and two other DNAs were relevant because S.J. had previously testified that any spermatozoa found could only come from two males: Embree or Dominick. But the district court did not allow Young to testify about the other intimate area swabs, because they contained only one

interpretable source of DNA, which could be from either of the men S.J. testified could have left the DNA.

Embree claims the DNA found in the spermatozoa in S.J.'s shorts and mons pubis swabs did not identify him or Dominick, so it provided no probative value to the jury and should have been excluded under § 27-403. He claims the court erred in allowing this evidence. We disagree.

### (b) Standard of Review

When the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, we review the admissibility of evidence for an abuse of discretion. *State v. Johnson*, 290 Neb. 862, 862 N.W.2d 757 (2015). A trial court exercises its discretion in determining whether evidence is relevant and whether its prejudicial effect substantially outweighs its probative value. *Id*. An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*.

### (c) Discussion

[5] All relevant evidence is admissible except as otherwise provided by law. *State v. Abligo*, 312 Neb. 74, 978 N.W.2d 42 (2022). Evidence is relevant if it has any tendency to make the existence of any fact that makes the determination of the action more or less probable than without the evidence. See *id*. Under § 27-403, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Unfair prejudice means an undue tendency to suggest a decision based on an improper basis. *State v. Abligo, supra*.

[6] In *State v. Johnson, supra*, the Supreme Court held that the district court committed harmless error by admitting a DNA expert's testimony that was misleading. The expert

testified as to DNA located on two acrylic nails located in the murder victim's duplex and on the rope tied around the victim's ankles. The expert stated she could not exclude the defendant as a minor contributor of the DNA found on one of the acrylic nails but provided no statistical significance of that. As to the DNA on the rope, she could not draw any conclusions regarding the minor contributor, and as to the second acrylic nail, she found a "'possible mixture'" with a minor contributor. *Id*. at 877, 862 N.W.2d at 773. Finding error in the admission of the evidence, the court stated:

> [The expert's] testimony that there may have been a minor contributor's DNA on the second nail was not probative of the source of the DNA. And her testimony that she could not draw any conclusions about the partial minor profile she found from the rope sample followed her earlier testimony that her inconclusive testing results from the first acrylic nail meant she could neither include nor exclude [the defendant] as the minor contributor. Nor did she explain why the partial minor profile from the rope did not exclude [the defendant], despite contradictions with his profile. And if this court cannot say with certainty whether [the defendant] should have been excluded or included, we assume that the jurors could have concluded from her testimony that [the defendant] was a possible source. So her testimony was either irrelevant or improperly suggested that the DNA evidence was stronger than it actually was.

*State v. Johnson*, 290 Neb. 862, 882-83, 862 N.W.2d 757, 773-74 (2015) (emphasis omitted). The court enunciated the following principle: "[W]e hold that unless the State presents the statistical significance of DNA testing results that shows a defendant cannot be excluded as a potential source in a biological sample, the results are irrelevant." *Id*. at 883, 862 N.W.2d at 774.

The *Johnson* court concluded, however, that given the expert's concession of the inconclusiveness of her samples

coupled with the defendant's overwhelming evidence of guilt, the error was harmless. The concurrence observed that while inconclusive DNA results are normally not admissible, there are circumstances where they may become admissible. See *State v. Johnson, supra* (Cassel, J., concurring; Heavican, C.J., joins). We find the case before us involves such circumstances.

[7] We base our conclusion in part on *State v. Wood*, 310 Neb. 391, 966 N.W.2d 825 (2021). In *Wood*, the Supreme Court held that counsel was not ineffective in failing to object to an expert's testimony about the presence of uninterpretable male DNA on an 8-year-old victim's external vaginal swabs because such evidence was relevant and admissible in an alleged sexual assault case. Distinguishing the issue and facts of the case before it from those in *State v. Johnson, supra*, the *Wood* court stated that in *Johnson*, "[a]t issue was expert testimony that the defendant's DNA profile could be neither included nor excluded from a mixed DNA sample from one of the victim's fingernails." *State v. Wood*, 310 Neb. at 433, 966 N.W.2d at 857. In *Wood*, however, the expert testified conclusively that male DNA was present. The court explained:

> In an alleged sexual assault described by a female victim as involving her genital area and a male perpetrator, the presence of male DNA near the victim's genital area is relevant to whether the assault occurred as the victim described, and such evidence is not outweighed by a danger of confusing the issues or misleading the jurors even if the DNA is of insufficient quantity or quality to obtain a profile. Here, the presence of male DNA on the external vaginal swabs of the victim's external vaginal area made the truth of the victim's allegations more probable, even if the DNA did not identify [the defendant] specifically.

*Id*. at 434-35, 966 N.W.2d at 857-58.

In the case before us, S.J. alleged that Embree sexually assaulted her, but she also explained that Dominick and Embree could be the only sources of spermatozoa found in or

around her vaginal area. Young's testimony that some of the DNA samples revealed a mix of DNA from two separate male contributors makes the truth of S.J.'s allegations more probable, even if the DNA did not identify Embree specifically. Therefore, following guidance from *State v. Wood, supra*, we conclude that the admissibility of Young's inconclusive DNA results fits within the circumstances contemplated by the concurrence in *State v. Johnson, supra* (Cassel, J., concurring; Heavican, C.J., joins), and such evidence is not outweighed by a danger of confusing the issues or misleading the jurors. Young was clear in her testimony that she could neither include nor exclude Embree as a minor contributor from the samples taken from S.J.'s mons pubis area or from the crotch of S.J.'s shorts. Therefore, the court did not abuse its discretion in admitting evidence of the inconclusive DNA results.

### 4. Prosecutorial Misconduct

#### (a) Additional Facts

During the State's closing argument, it implied that Embree was one of the sources of the uninterpretable DNA found in the interior crotch of S.J.'s shorts. Specifically, the prosecutor stated:

> What else did the DNA show? Spermatozoa, sperm, semen. Where does that come from? It can only come from a male. That was on the interior crotch of her shorts. There were two spots. They analyzed one. A mixture of two males. Again, who were the two possible — the only two possible individuals: Dominick —

Embree objected because he believed it was an improper implication or inference, as well as contradictory to the case law. The district court overruled Embree's objection. The prosecutor continued, further stating that there had been no evidence to rebut any of S.J.'s testimony, and she testified there were only two possible sources for the DNA found: Embree and Dominick. Embree did not move for a mistrial.

Embree argues that the district court erred by allowing the prosecutor to claim Embree was a contributor of the DNA found in the interior crotch of S.J.'s shorts and on the mons pubis swabs. We find Embree has failed to preserve this error.

### (b) Standard of Review

When a defendant has not preserved a claim of prosecutorial misconduct for direct appeal, we will review the record only for plain error. *State v. Price*, 306 Neb. 38, 944 N.W.2d 279 (2020). An appellate court may find plain error on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. *Id*. Generally, we will find plain error only when a miscarriage of justice would otherwise occur. *Id*.

### (c) Discussion

[8] An objection made during closing arguments without a motion for mistrial does not preserve any error resulting from the prosecutor's remarks for appellate review. See *State v. Robinson*, 271 Neb. 698, 715 N.W.2d 531 (2006). Since Embree failed to preserve his claim for prosecutorial misconduct, we review only for plain error. See *State v. Price, supra*.

To determine whether the State engaged in prosecutorial misconduct based on statements made during closing arguments, a reviewing court first determines whether the prosecutor's remarks were improper. *Id*. Then, if necessary, it determines the extent to which the improper remarks had prejudicial effect on the defendant's right to a fair trial. *Id*. Prosecutorial misconduct encompasses conduct that violates legal or ethical standards for various contexts because the conduct could undermine a defendant's right to a fair trial. *Id*. Prosecutors have a duty to conduct fair and impartial criminal trials and to not inflame the prejudices or excite the passions of the jury against the accused. See *id*. A prosecutor's conduct will not amount to misconduct if it does not mislead

and unduly influence the jury. See *id*. A prosecutor cannot express his or her personal belief or opinion as truth or falsity of any testimony, evidence, or guilt. See *id*. However, a prosecutor is permitted to present a spirited summation that a defense theory is illogical or unsupported by the evidence if those comments rest on reasonably drawn inferences. See *State v. Gonzales*, 294 Neb. 627, 884 N.W.2d 102 (2016).

The prosecutor's statements do not conflict with the evidence presented. Although Young was unable to testify as to the identity of the DNA contributors on S.J.'s mons pubis area and the crotch of her shorts, S.J. identified the only two possible contributors as Embree and Dominick. The prosecutor's argument, therefore, is based upon reasonably drawn inferences from the evidence, and we find nothing improper in making them. Accordingly, we find no plain error when the district court overruled Embree's objection to the State's closing arguments.

### 5. Cumulative Error

Embree argues the district court's errors were cumulative in depriving him of a fair trial.

### (a) Standard of Review

Whether cumulative error deprived the defendant of his or her Sixth Amendment right to trial by an impartial jury presents a question of law to be reviewed de novo. *State v. Smith*, 292 Neb. 434, 873 N.W.2d 169 (2016).

### (b) Discussion

[9] Although one or more trial errors might not, standing alone, constitute prejudicial error, their cumulative effect may be to deprive the defendant of his or her constitutional right to a public trial by an impartial jury. *State v. Anders*, 311 Neb. 958, 977 N.W.2d 234 (2022). However, since we found no error above, Embree's argument for cumulative error is without merit. See *State v. Garcia*, 302 Neb. 406, 923 N.W.2d 725 (2019).

### 6. INEFFECTIVE ASSISTANCE
### OF COUNSEL

Lastly, Embree assigns he received ineffective assistance of counsel.

### (a) Standard of Review

Alleged errors of the lower court must be both specifically assigned and specifically argued in the brief of the party asserting the errors to be considered by the appellate court. *State v. Lessley*, 312 Neb. 316, 978 N.W.2d 620 (2022).

### (b) Discussion

[10] Embree fails to meet the specificity requirements for assigning a claim of ineffective assistance of counsel under *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019); therefore, we do not need to reach the merits of his claim. A defendant must specifically allege deficient performance of counsel, and the appellate court will not scour the remainder of the brief in search of such specificity. See *id*. Embree merely assigns his "trial counsel was ineffective" without specifying how he was ineffective. Brief for appellant at 22. This does not meet the requirement of *Mrza*; thus, we do not review his claim.

### V. CONCLUSION

For the aforementioned reasons, we affirm Embree's conviction.

AFFIRMED.